(No. 23246.—

MARY BOHNERT *et al.* Appellants, *vs.* THE BEN HUR LIFE ASSOCIATION, Appellee.

*Opinion filed February 14, 1936.*

GEORGE W. KENNEY, for appellants.

WILLIAM W. KUMMINGS, DOYLE, SAMPSON & GIFFIN, and SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, (HERBERT M. LAUTMANN, HENRY S. MOSER, and HOMER KRIPKE, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This controversy grows out of a merger contract between two fraternal beneficiary societies, under which the Ben Hur Life Association of Indiana took over the membership, business, assets and liabilities of the Loyal American Life Association of Illinois. For convenience the two societies will be respectively referred to as the Ben Hur and the Loyal American. Mary Bohnert, Manuel Roderick and Minnie Wells, holders of certificates in the Loyal American, filed an amended complaint in the circuit court of Sangamon county against the Ben Hur praying for the construction of the contract, the issuance by defendant of assumption certificates, of the exact scope of such provisions of the contract as may be determined by the court to be legal, and for an injunction restraining the enforcement of the provisions which may be determined by the court to be illegal. The complaint as finally amended was adopted by other intervening co-plaintiffs. Defendant filed a motion in the nature of a demurrer to dismiss the complaint and for judgment. A cross-motion by plaintiffs to strike certain parts of defendant's motion was denied. De-

fendant's motion was sustained and a decree dismissing the suit was entered. Plaintiffs have appealed to this court from the decree and the order denying the cross-motion.

It appears from the complaint and exhibits that the Loyal American was in financial straits. It had less than $21,000 cash with which to meet accrued death claims of more than $100,000 and other liabilities of almost an equal amount. It had over 7000 members, with almost $7,000,000 of insurance in force. Of its assets, $306,900 in bonds had a market value of about $76,000, and about $390,000 of its other assets, at their book value, consisted of real estate and mortgages. Without detailing the condition of the Ben Hur, its gross assets were over $10,000,000, with a surplus of more than $750,000.

The merger contract provides that all the assets transferred are to be set aside for the use and benefit of all the members of the Loyal American and designated as the Loyal American fund. Because the assets of the Loyal American were not sufficient to pay the obligations assumed by the Ben Hur, a lien, similar to a certificate loan, was established against each Loyal American certificate. It was initially fixed at the amount of the reserve required by the American Experience Table of Mortality, with interest at four per cent, according to what is known as the Illinois Standard Modification. (Ill. State Bar Stat. 1935, chap. 73, par. 331.) Periodical adjustments of the amount of the lien are provided for, to be determined by annual re-valuations of Loyal American assets and the application of profits and losses of that business. Unless previously discharged, the lien is to become fixed on December 31, 1948, at which time the Loyal American fund is to be merged in the general assets of the Ben Hur. A five-year moratorium on policy loans and surrenders was also provided. The Ben Hur agreed to pay all accrued death claims of the Loyal American within ninety days, from the Loyal American fund. For that purpose it was authorized

to sell or buy for its own account, at not less than the market price shown on an attached schedule, the $306,900 in bonds, any profit above the listed values to accrue to the Loyal American fund. The contract was approved by the insurance departments of Illinois and Indiana.

The amended complaint charges that the contract contemplates a radical departure from the distinctive principles of fraternal beneficiary societies and adopts those which are attributes of old-line life insurance companies, particularly in the application of the American Experience Table and the Illinois Standard Modification for the creation of a legal reserve under individual trusts. It alleges that so-called legal reserves are applicable only to old-line insurance, whereas the reserve of a fraternal society is based on "percentage," which must be held as a general trust for the benefit of all. The complaint also alleges, and asks the court to find, that the plaintiffs are members of the Ben Hur in good standing; that the contract is divisible, and that the Ben Hur is estopped to deny that fact; that the legal provisions may be upheld and the illegal provisions held for naught; that one of the provisions purports to invest an Indiana corporation with power to enforce the by-laws of the Loyal American upon its members, thus limiting the sovereignty of this State, in violation of the State and Federal constitutions; that the 1919 act, (Ill. State Bar Stat. 1935, chap. 73, par. 529,) providing for separation of reserves of fraternal and loyal beneficiary societies for the protection of benefits promised in certificates, is likewise unconstitutional, and that since the execution of said contract, in order to induce the Loyal American members to make new applications for membership in the Ben Hur at their accrued ages instead of their entry ages, the Ben Hur has made false and fraudulent representations to such members as to their rights under the contract; that the contract creates a completed amalgam of the membership of the two societies, with a merger of mor-

tality and their funds, including a "percentage reserve" fund if created and collected; that all members contributing on the basis of their ages at their original entry into either society are entitled to participate in such funds on the basis of equality and mutuality; that the system of separate accounting, and the attempted establishment of two separate classes of members and two funds, are illegal and void; that the provisions relating to policy liens, exchange of certificates, expense allowance, paid-up and extended insurance, expense fund, the option to buy securities, and the allocation of assets to any class or group, are illegal and void. The complaint states that plaintiffs do not seek to reform the contract upon mistake, fraud or otherwise, but seek to avoid its illegal and oppressive provisions and to establish the rights of plaintiffs upon the principles of fraternals under Illinois law.

The grounds of defendant's motion to dismiss the complaint are, that the amended complaint has no prayer for relief other than for a declaratory construction of the contract; that the allegations of fact are insufficient for relief in equity; that the allegations of fraud are without allegations of fact to support them; that most of the allegations are mere recitals of rules of law, many of them erroneous and many of them merely conclusions, and that the most that can be gleaned from the complaint is a request of the court to make a new contract for the parties in lieu of the one executed and partly performed. The matters referred to are detailed, but it is unnecessary to set them out here.

Plaintiffs' cross-motion to strike was directed at the allegation in defendant's motion relating to a declaratory judgment and certain argumentative deductions from the amended complaint and exhibits. Under the Civil Practice act defendant's motion was in the nature of a demurrer. We know of no practice by which a part of a demurrer can be stricken. In equity not even the joinder in demurrer, familiar in common law pleading, was used. Upon

the filing of a demurrer it was summarily set down and heard without further pleadings. Defendant's motion asked for judgment because of insufficiency of the amended complaint to state a cause of action. This satisfied the statute. There was no error in denying plaintiffs' cross-motion.

This leaves for consideration the sufficiency of the amended complaint as tested by the motion for judgment. Plaintiffs do not seek to cancel or set aside the contract, and the amended complaint specifically disclaims any attempt to reform it. It is not claimed that defendant has not carried out the contract or that plaintiffs have been denied any right under its provisions as written. The relief asked is that the court construe the contract, eliminate the alleged illegal provisions and substitute therefor other provisions not intended or agreed to by either party. This is particularly true of the reserve fund, which is said to be a legal reserve applied to individual certificates. It is sought to change this to a "percentage reserve," to be held as a general trust fund. A court of equity cannot make a new contract for the parties or substitute another different from the one into which they have entered. *Clark* v. *Muir,* 298 Ill. 548; *Carpenter* v. *Plagge,* 192 id. 82; 25 R. C. L. "Reformation of Instruments," sec. 4.

The complaint challenged the validity of a statute and raised certain constitutional questions which gave this court jurisdiction of this case on appeal. But inasmuch as we have concluded that the complaint did not state a cause of action it becomes unnecessary to pass upon the constitutional questions or the validity of the statute. *Brown* v. *Federal Life Ins. Co.* 353 Ill. 541; *People* v. *Adams,* 351 id. 79.

The order denying the plaintiffs' cross-motion and the decree sustaining the defendant's motion and dismissing the amended complaint are affirmed.

*Order and decree affirmed.*