SCHWANKE, SCHWANKE AND ASSOCIATES, Plaintiff-Appellant, v. GWEN R. MARTIN, Director, The Department of Labor, Defendant-Appellee.

First District (4th Division)   No. 1—91—0485

Opinion filed June 30, 1992.—Rehearing denied March 25, 1993.

Lawrence X. Pusateri, Bruce N. Menkes, and Mark W. Daliere, all of Peterson & Ross, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff filed suit for declaratory judgment seeking a determination that it was not in violation of the Illinois Prevailing Wage Act (Ill. Rev. Stat. 1987, ch. 48, pars. 39s—1 through 39s—12 (the Act)). The trial court ruled that plaintiff's complaint was premature and dismissed it with prejudice. Plaintiff appeals from this order.

■ Section 1 of the Act declared that it is the policy of the State "that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." (Ill. Rev. Stat. 1987, ch. 48, par. 39s—1.) Section 11a provided that contractors "found to have disregarded their obligations to employees under this Act after receipt of a complaint of violation and consideration of the complaint at a hearing before the Department" were to be placed on a list debarring them from bidding on or receiving any public work contracts for a period of two years. Contractors were to be given adequate notice of and an opportunity to appear at the hearing. Ill. Rev. Stat. 1987, ch. 48, par. 39s—11a.

On December 28, 1989, plaintiff, Schwanke, Schwanke & Associates, filed a complaint in the circuit court of Cook County seeking a declaration that it is a partnership and was not in violation of the Act. Named as defendant was Gwen R. Martin, Director of the Department of Labor (the Department), which is the agency charged with administration and enforcement of the Act.

Plaintiff's complaint alleged that it was organized as a partnership pursuant to the Uniform Partnership Act (Ill. Rev. Stat. 1987, ch. 106½, par. 1 *et seq.*), and that it is engaged in the business of maintaining, repairing and constructing fences and repairing damage to guardrails resulting from motorist accidents and other causes on Illinois roadways. Plaintiff alleged that on various occasions during the preceding 2½ years, the Department had contended that it was in violation of the Act, and that on each occasion, plaintiff responded to the Department that since its laborers were partners, rather than employees, it was not in violation of the Act.

Attached to the complaint was a copy of a partnership agreement and a 1987 letter from the Department which stated the Department investigator's belief that several persons named as partners in the agreement were actually employees to whom plaintiff was bound to pay no less than the prevailing wage for their work on public projects. Also attached was a November 1989 letter advising plaintiff of the Department's intention to initiate a debarment hearing to resolve whether plaintiff was in violation of the Act. Plaintiff alleged, and it is not disputed, that a hearing had not been initiated on December 28, 1989, the date its complaint was filed. Plaintiff further alleged that the version of the Act then in effect did not allow for a contractor to initiate or request such a hearing. Plaintiff thus requested the court to declare that it is a partnership and, therefore, not in violation of the Act.

On January 1, 1990, an amended version of the Act became effective. Section 11, as amended, provides for initiation of an administrative hearing by the contractor rather than the Department. Failure to request a hearing within 10 working days after receipt of notice of two separate violations of the Act results in automatic and immediate placement on the debarment list. Ill. Rev. Stat. 1991, ch. 48, par. 39s—11a.

On February 2, 1990, in lieu of an answer, the Department filed a motion to dismiss the complaint on the ground that plaintiff had failed to exhaust its administrative remedies prior to seeking declaratory relief in the circuit court. The Department argued that

plaintiff was attempting to circumvent the administrative hearing procedures set out in section 11a and section 9, which incorporate the provisions of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*), for challenging a determination that it had violated the Act.

On November 5, 1990, plaintiff moved for a preliminary injunction to enjoin the Department from placing it on the debarment list. Plaintiff based its request on its receipt of two violation notices sent by the Department in late October 1990, which were attached to the motion. The first notice identified the projects for which the violation notice was issued and advised plaintiff to comply with the requirements of the Act in the future. The second notice, sent the same day as the first, listed additional projects on which the Department determined plaintiff had violated the Act. The letter attached advised plaintiff of its right to request an administrative hearing within 10 business days, and that the failure to do so would result in plaintiff's automatic and immediate placement on the two-year debarment list. Plaintiff argued that it was faced with the choice of being summarily debarred by failing to request a hearing, or participating in a hearing which, in light of the Department's predetermination that it was not a partnership, would have the same outcome, *i.e.*, debarment. Plaintiff maintained that unless the court issued a preliminary injunction it would suffer the irreparable harm of debarment which would, effectively, put it out of business, and that it had no adequate remedy at law.

In opposition to the preliminary injunction, the Department filed a memorandum in which it incorporated the bases for its motion to dismiss. The Department argued that plaintiff had not stated any ground for its belief that it was a "foregone conclusion" that the result of a hearing would be unfair debarment. The Department further argued that a belief that the outcome of an administrative hearing will be adverse is not adequate to avoid the exhaustion of remedies requirement.

Plaintiff then filed a response to the motion to dismiss. In it, plaintiff maintained that at the time it filed its complaint no administrative remedies were available to it because under the pre-amended version of the Act only the Department could initiate a hearing and that the Department had never done so. Plaintiff reiterated, however, that even assuming the availability of any remedies, it was relieved from pursuing them by the futility exception to the exhaustion of remedies doctrine.

In support of its positions, plaintiff attached three affidavits to its response, all of which were dated December 17, 1990. In the first, Dennis Schwanke stated that although the Department had repeatedly asserted that plaintiff was in violation of the Act, prior to October 1990, plaintiff had never received any notices of violations, nor, until December 1990, had plaintiff received notice that a hearing had been initiated by the Department. The affidavit of Scott Guido, then counsel for plaintiff, stated that Guido had attended meetings in July and August 1990 with Robert Barker, a labor facilitator of the Department, at which Barker stated that debarment proceedings had been initiated against plaintiff. In the third affidavit, Dennis Schwanke averred that the sum of approximately $2,000 for completed projects was owed to plaintiff for over 120 days, and that it was his belief that the delay in payment was due to the Department's determination that plaintiff was in violation of the Act. Plaintiff also attached excerpts from a court reporter's transcription of a November 1987 meeting among Dennis Schwanke, Patsy Schwanke, plaintiff's counsel, plaintiff's accountant and Bernard Griffeth of the Department at which Griffeth stated that the Department believed that plaintiff was not a partnership for the purpose of exemption from the Act and was in violation of it.

In its reply, the Department asserted that both versions of the Act provided the right to a hearing prior to placement of a contractor on the debarment list, the only modification being that the amended version required that the contractor rather than the Department request such a hearing following notification of two violations. The Department argued that plaintiff's admission that no hearing had ever taken place established that the action was not ripe for judicial resolution and that, there being no "actual controversy" as required by statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—701), the complaint was premature and should be dismissed. The Department reiterated its arguments regarding the applicability of the exhaustion of remedies doctrine and repeated its request for dismissal.

Following arguments at a hearing on December 21, 1990, the court ruled that plaintiff's complaint was premature and dismissed it without prejudice. The court ordered plaintiff to participate in the administrative hearing with leave to file a motion to stay the imposition of debarment sanctions in the event of an adverse outcome.

On January 14, 1991, plaintiff filed a motion for reconsideration, asserting that it had been unfairly prejudiced by the Depart-

ment's raising of the theory of ripeness for the first time in a reply memorandum filed the day before the hearing. Plaintiff maintained that it had not been afforded adequate time to respond to the Department's argument. Plaintiff also argued that the case presented an actual controversy and requested that the court vacate its order of December 21 and deny the Department's motion for dismissal. In the alternative, plaintiff requested that the dismissal be entered with prejudice and a finding of no just reason to delay its appeal. On February 6, 1991, the trial court denied plaintiff's motion for reconsideration of the dismissal, but granted plaintiff's request for dismissal with prejudice and a finding that the order was final and appealable. Plaintiff's timely appeal followed.

We first address plaintiff's argument that the Department improperly raised affirmative matters in a motion to dismiss under section 2—615, which is limited to challenges to the sufficiency of the complaint. Plaintiff argues that courts have held that where a dismissal is granted pursuant to a motion brought under the wrong section of the Code of Civil Procedure, with the result that the plaintiff is prejudiced, the dismissal should be vacated. *Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 510 N.E.2d 1111.

The record discloses that the Department's motion to dismiss was filed on February 2, 1990. The motion alleged that "plaintiff's cause of action fails to state a claim upon which relief can be granted because it is barred by the exhaustion of remedies doctrine," and its concluding paragraph requested dismissal under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). Plaintiff filed a motion for a preliminary injunction on December 17, 1990, and, on the same date, a response to the motion to dismiss. In neither document did plaintiff argue that the Department improperly raised the affirmative matter of exhaustion of remedies in a section 2—615 motion. Indeed, plaintiff responded that no remedies were available to it and, in any event, pursuit of any such remedies would have been futile. Plaintiff also attached three affidavits, excerpts from a transcribed meeting, copies of the two notices of violations and letters from the Department.

In its reply to plaintiff's response, the Department reiterated its argument regarding the exhaustion of remedies and further argued that, because there had been no administrative hearing, the complaint did not present a controversy ripe for judicial determination. Plaintiff made no objection at the hearing that the matters raised by the Department were improperly raised in a section 2—615 mo-

tion or that it was prejudiced by the Department's argument concerning ripeness. It was not until February 6, 1991, in its motion for reconsideration, that plaintiff asserted that it had been prejudiced at the December hearing because it had not been afforded adequate time to respond to the ripeness theory and that the issue of ripeness went beyond the scope of a section 2—615 motion.

■ Since the purpose of a section 2—615 motion is solely to challenge the sufficiency of the complaint, affirmative matters which could defeat a claim should be presented by way of a section 2—619 motion. (*Willard v. Northwest National Bank* (1985), 137 Ill. App. 3d 255, 484 N.E.2d 823.) However, we find no prejudice to plaintiff, as is required for reversal. As demonstrated above, plaintiff, in its written and oral responses and by submission of affidavits and other documents, treated the motion as a hybrid motion when plaintiff argued both that the complaint stated a cause of action and that it was not barred by the exhaustion of remedies doctrine. Further, it is clear from the record that the court understood plaintiff's position and considered the matters submitted by plaintiff in support of it. Thus, remandment of this case for reconsideration of matters which have already been presented to the trial court and briefed and argued in this court would not serve the interests of judicial economy and expediency. See *Bescor v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 446 N.E.2d 1209.

We turn then to the merits of the case. Plaintiff's contentions on appeal are the same as those made in the trial court, *i.e.*, that the court erroneously ruled that the complaint was premature; that there were no administrative remedies for plaintiff to pursue; and that, in any case, the exhaustion of remedies doctrine is inapplicable because pursuit of any such remedies would have been futile.

■ A complaint for declaratory judgment which recites in sufficient factual detail an actual and legal controversy between the parties and requests a declaration of rights is sufficient to state a cause of action (*Outboard Marine Corp. v. James Chisholm & Sons, Inc.* (1985), 133 Ill. App. 3d 238, 478 N.E.2d 651; *Goldberg v. Valve Corp. of America* (1967), 89 Ill. App. 2d 383, 233 N.E.2d 85); and under section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—701), a court may make a binding declaration of rights having the force of a final judgment in justiciable cases. However, in order to maintain an action for declaratory relief, it is essential that there be an "actual controversy" and that the party seeking the declaration have a tangible, legal interest in that controversy. *Underground Contractors Association v. City of Chicago*

(1977), 66 Ill. 2d 371, 362 N.E.2d 298; see generally *Illinois Municipal League v. Illinois State Labor Relations Board* (1986), 140 Ill. App. 3d 592, 488 N.E.2d 1040.

Plaintiff argues that its declaratory judgment action was not premature because there was an actual controversy concerning a legal status and a right capable of being affected by the trial court. Plaintiff reasons that its status as a partnership, and its right to bid and work on public projects, are the status and right which would be affected by a determination of the controversy between the parties, which, according to plaintiff, is whether it is a partnership.

■ Discussing the requirement of an "actual controversy," the supreme court in *Underground Contractors Association* stated:

" ' 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (66 Ill. 2d at 375, 362 N.E.2d at 300.)

Applying this analysis, the supreme court in *Underground Contractors Association* found that the plaintiff, a trade association which sought a declaration that a minority bidding policy was illegal, had failed to allege facts showing injury or the threat of injury to its members as a result of the policy sufficient to allow it to maintain the action.

In *Howlett v. Scott* (1977), 69 Ill. 2d 135, 370 N.E.2d 1036, the Attorney General ordered an investigation to determine whether certain payments made to the plaintiff while he was in public office constituted a conflict of interest which would entitle the State to institute a civil suit to recover those funds. The completed investigative report identified a conflict of interest, but recommended that the Attorney General delay instituting legal action against Howlett pending the outcome of certain cases before the supreme court which were the basis of the report's finding of a conflict. Two days after issuance of the report, the plaintiff filed a complaint for a declaratory judgment that there was no conflict of interest.

Relying on *Underground Contractors Association,* the supreme court ruled that no actual controversy existed when the complaint was filed and that the trial court should have, in its sound discretion, ordered dismissal of the complaint as being premature. The court reasoned that the rights plaintiff sought to be declared were dependent upon future events, *i.e.,* the outcome of two undecided cases. The court also stated that plaintiff was seeking a declaration of nonliability for past conduct, which section 2—701 was not designed to provide.

Similarly, in *Delano Law Offices, P.C. v. Choi* (1987), 154 Ill. App. 3d 172, 506 N.E.2d 723, the plaintiffs sought a declaration that certain fees charged by the defendant were unreasonable. The plaintiffs had not paid the charges nor had the defendant instituted a collection action or other proceeding to enforce their payment. Citing *Howlett* and *Underground Contractors Association,* the appellate court affirmed the trial court's dismissal of the complaint for failure to state a cause of action, stating that a complaint for declaratory judgment may be dismissed if the plaintiff is not entitled to the relief sought under the facts alleged in it. The *Delano* court found that the plaintiffs were seeking a judgment of nonliability for past conduct, which relief is not appropriate under the declaratory judgment statute; and that because the defendant had not instituted an action against plaintiff for the fees, declaratory judgment on the issue of their reasonableness would be premature.

In the instant case, plaintiff's complaint alleged that at various times in the preceding two years, the Department had contended that plaintiff was in violation of the Act and had stated its intention to institute a debarment hearing but "has not to this date, initiated that hearing." One of the letters attached in support of the the complaint was sent by the Department in 1987. In it the investigator enumerated various reasons for his belief that certain workers whom plaintiff characterized as partners were actually employees, invited plaintiff to respond with its reasons for believing the workers were actually partners, but advised plaintiff that in the interim it remained his belief that the workers were employees who should be paid the prevailing wage. In the second letter, dated November 1989, counsel for the Department stated that "the fairest and best way to resolve" whether plaintiff was in violation of the Act was "to set up a hearing for debarment *** [which] will allow [plaintiff] to present evidence and legal arguments." Counsel indicated that the matter would be referred to outside counsel who would be in touch with plaintiff to determine when to schedule the

hearing. Plaintiff filed its complaint prior to the institution of any administrative proceedings.

Although the complaint alleges a disagreement between the parties, in our view it fails to allege an actual, legal controversy as that requirement has been defined and applied by the courts. The complaint does not allege that the Department placed plaintiff on the debarment list; indeed, it affirmatively states that the Department had not even instituted debarment proceedings. As in *Underground Contractors Association, Howlett* and *Delano,* the complaint requested both an advisory opinion on matters which would be at issue in the future, in the event the Department took actions to debar plaintiff for violation of the Act, and also requested a declaration of nonliability for past conduct.

Plaintiff argues, however, that the analysis of these cases is inapplicable to this case because, as established in the affidavit of Dennis Schwanke, the Department had already taken adverse action against it for its alleged violation of the Act by withholding payment for completed work. Plaintiff maintains that because the measures taken by the Department fell short of debarment, plaintiff had no right to an administrative hearing and, consequently, declaratory judgment was the only relief available to it.

Initially, we note that although plaintiff's motion to reconsider refers to an affidavit from Schwanke in which he purportedly stated that the Department had taken various actions which were injurious to plaintiff, including directing the withholding of approximately $49,400 for completed projects, no such affidavit appears in the record. The only affidavit by Schwanke regarding withheld payments is dated December 17, 1990. In it, he merely states, without support, that he "believe[d]" that approximately $2,000 then owed by the State had been withheld because of the Department's determination that plaintiff was in violation of the Act.[1]

Further, an argument similar to plaintiff's was made and rejected in *Howlett.* There, the plaintiff, a gubernatorial candidate, argued that declaratory judgment was necessary because the public

---

[1]Attached to the Department's response to plaintiff's motion for reconsideration is an affidavit from a division manager, David Hayes, in which Hayes expressly denied that the Department directed the withholding of $49,400, or any other amount, from plaintiff, or that it prevented plaintiff from bidding on public works projects. It is not stated, however, whether Hayes' affidavit was submitted in response to an affidavit by Schwanke or simply to the allegations in plaintiff's memorandum in support of its motion to reconsider.

release of the investigative report finding a conflict of interest caused substantial negative publicity, cast a suspicion over him and his campaign and endangered his candidacy for public office. The supreme court acknowledged the adverse ramifications of the investigation and report but nevertheless held that the declaratory judgment procedure was not the appropriate method of resolving the plaintiff's dilemma.

Additionally, even assuming payments for completed work were withheld, for whatever reason, we do not agree that plaintiff had no remedy. While plaintiff may not have been able, at the time suit was filed, to demand an administrative hearing, it could have, as counsel for plaintiff reluctantly conceded, brought an action to recover back payments owed for work on completed projects. Plaintiff's complaint, however, did not seek a monetary judgment; rather, it was, in essence, a challenge of the Department's investigation into whether plaintiff was in violation of the Act. Plaintiff insists that a declaratory judgment action is more expedient because a declaration that it is a partnership and, therefore, not subject to the Act, would resolve all matters at issue between the parties. But that is precisely why the action was premature. As in the cases cited above, plaintiff's action sought a declaration of nonliability for past conduct and legal advice which would foreclose the Department's right to take formal action against plaintiff in the future. The declaratory judgment statute is not designed for such purposes.

■ A plaintiff seeking declaratory judgment must specify all facts necessary to justify the unusual relief sought. If the complaint does not state facts sufficient to show ripeness, dismissal is proper. (*Illinois Municipal League v. Illinois State Labor Relations Board* (1986), 140 Ill. App. 3d 592, 488 N.E.2d 1040.) In this case, plaintiff's complaint failed to allege or establish the existence of an actual controversy ripe for judicial determination. The trial court properly dismissed the complaint as being premature.

Although we find that plaintiff's complaint was properly dismissed on the ground that it did not present a justiciable controversy, we believe that even if the issue of ripeness had not been raised or considered, dismissal of the complaint also would have been proper on the ground that it was barred by the exhaustion of remedies doctrine. The principles of ripeness and exhaustion of remedies are closely related in that both involve the general issue of the prematurity of the action.

It is well settled that parties who feel aggrieved by the action of an administrative agency ordinarily are precluded from seeking relief in the courts without first pursuing all administrative remedies available to them under the applicable statute. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437; *People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 427 N.E.2d 1226.) The exhaustion doctrine applies where a claim is cognizable in the first instance by an administrative agency. If the agency is vested by the legislature with the authority to administer the statute, relief by way of declaratory judgment is not available; judicial interference must be withheld until the administrative process has run its course. (*Fahner*, 86 Ill. 2d at 485-86.) The supreme court in *Castaneda* explained that among the policy considerations underlying the exhaustion doctrine are that it allows the agency to fully develop and consider the facts of the cause and to utilize its expertise; it protects the agency processes from impairment by avoidable interruptions; it gives the aggrieved party the opportunity to succeed before the agency; and it allows the agency to correct its own errors, thus conserving valuable judicial time. *Castenada*, 132 Ill. 2d at 308.

In this case, plaintiff's administrative remedies were not exhausted, and there has been no pursuit of the remedies provided by the Act. A hearing has not been held, as is prerequired for the filing of a suit.

Plaintiff maintains that when it filed suit, no remedies were available to it because only the Department could initiate the administrative hearing process. As discussed above, the reason a hearing was not available to plaintiff was because no formal steps had been taken to place plaintiff on the State's debarment list. Notwithstanding plaintiff's claims that the Department had caused certain payments for completed work to be withheld or delayed, which was denied in an affidavit submitted by the Department, debarment had not occurred. Thus, plaintiff's complaint for a declaration that it was a partnership and not in violation of the Act was not filed in response to a debarment decision by the Department but, rather, in anticipation of such a decision.

Further, within days after plaintiff's complaint was filed, the amended version of the Act took effect and provided that a contractor determined to be in violation of the Act had the right to request a hearing within 10 business days of notification by the Department of two violations. Until it issued such notifications and the time within which plaintiff had the right to request a hearing had ex-

pired, the Department could not debar plaintiff. Thus, under either version of the Act, plaintiff was entitled to a hearing prior to being placed on the debarment list.

The two required notices of violations were issued by the Department in October 1990. Plaintiff argues, however, that its action was already before the trial court by that time; that proceeding to an administrative hearing would have been futile because the Department had already concluded that it was in violation of the Act; and that its only alternative to being put out of business by debarment was to seek judicial intervention.

The facts before us are strikingly similar to those in *Dock Club, Inc. v. Illinois Liquor Control Comm'n* (1980), 83 Ill. App. 3d 1034, 404 N.E.2d 1050. In *Dock Club,* the plaintiff, a dramshop owner, occasionally held "ladies nights," during which female patrons were allowed to purchase alcoholic beverages at reduced prices. In correspondence between the plaintiff and the Liquor Control Commission, plaintiff was informed that the Commission believed that holding ladies nights violated a provision of the Dramshop Act. Plaintiff disputed the Commission's interpretation of the Act and requested that the Commission seek an opinion from the Attorney General as to the legality of ladies night promotions. The Commission declined and advised plaintiff that licensees which featured such promotions were subject to fines and/or suspension or revocation of their licenses. Plaintiff filed a declaratory judgment complaint seeking a declaration that its ladies nights did not violate the Dramshop Act and an injunction enjoining the Commission from initiating any enforcement proceedings against it. Shortly thereafter, the Commission issued a citation against plaintiff and notice of a hearing. The plaintiff moved for a temporary restraining order to prevent the Commission from pursuing the citation procedure. The court granted the motion, finding that the declaratory judgment action was pending at the time the citation proceeding was initiated, and that in light of the Commission's stated position on the issue, proceeding before the Commission would be futile.

On appeal by the Commission, the plaintiff argued that declaratory judgment was the only relief available to it because there was no way to challenge the Commission's interpretation of the Dramshop Act "other than to wait for the axe to fall via a citation hearing," and that such a hearing on the citation would be meaningless because the Commission had already concluded, as stated in its letter to the plaintiff, that ladies nights were illegal.

The appellate court rejected the plaintiff's arguments and reversed the order of the trial court. The *Dock Club* court observed that notwithstanding the Commission's letter stating that licensees would be subject to citation, it did not state that all citation proceedings would be resolved in favor of the Commission. The court reasoned that "[w]hile the tone [of the letter] is peremptory, it is no more so than that of any other administrative tribunal which sits as both prosecutor and trier of fact. At the citation proceeding, plaintiff can present all the same arguments which could have been presented to the circuit court and in the event of an unfavorable ruling by the Commission can present them again under the Administrative Review Act [citation] to the circuit court which is empowered to stay the administrative decision [citation]." 83 Ill. App. 3d at 1037.

Citing various supreme court decisions, the court in *Dock Club* also observed that the futility exception to the exhaustion of remedies doctrine is a limited one, and that even clear indications that the administrative agency will rule adversely are not sufficient to bypass or terminate the administrative process. The court observed that to adopt the plaintiff's theories "would be to condone a race to the courthouse and to undermine severely the authority of the [administrative agency], a result quite clearly not intended by the legislature." 83 Ill. App. 3d at 1038.

The reasoning and decision in *Dock Club* correctly expresses the views of our supreme court in decisions both preceding and following the *Dock Club* case. In *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964, the supreme court held that the exhaustion of remedies requirement cannot be avoided simply because relief may be, or even probably will be, denied by the agency. Accord *Castenada*, 132 Ill. 2d at 328.

In *Fahner* (86 Ill. 2d 479, 427 N.E.2d 1226), the supreme court also rejected the argument that a declaration by the circuit court as to whether or not AT&T was a taxpayer within the meaning of the tax statute prior to the institution of any administrative proceedings to determine whether AT&T was subject to certain taxation was appropriate because it would expedite those proceedings. The court acknowledged that a declaratory judgment might substantially shorten the administrative proceedings, but stated that it was not in a position to make that determination. The court further stated that as salutory as that result might seem, to allow circumvention of a statutorily created administrative proceeding would deprive the agency of the jurisdiction conferred upon it by the legislature. The *Fahner* court also noted that the same

argument of expediency could be made by anyone against whom the agency threatened to take action.

The reasoning and holdings of these cases are directly applicable to the case before us. In the instant case, there would be no reason for an administrative debarment hearing if the Department did not believe that plaintiff, or any other contractor, violated the Act by failing to pay the prevailing wage to its employees. Institution of the process necessarily depends on a determination by the Department that a contractor disregarded its obligations under the Act. However, as the Act provides and the Department's letters to plaintiff stated, plaintiff would have the opportunity at a hearing to present evidence and legal arguments in support of its assertion that its laborers were actually partners to whom plaintiff was not obliged to pay the prevailing wage. The Act also provides for administrative review of an adverse decision at the hearing and, ultimately, judicial review of the final administrative determination. The same arguments advanced by plaintiff to support its request for declaratory relief could be advanced by any contractor facing possible debarment by the Department.

Further, a declaration by the circuit court on the issue of whether plaintiff is a partnership, in which its laborers were partners rather than employees who were protected by the Act, would completely foreclose any further proceedings by the Department. Such overriding of the Department's authority is contrary to the intent of the legislature, which has statutorily empowered the Department to exercise its expertise and make initial determinations concerning enforcement of the Act governing wages to be paid for work on public projects.

Finally, and parenthetically, we note that although the trial court dismissed plaintiff's complaint as premature, the initial order of dismissal was without prejudice and with leave for plaintiff to move for a stay in the event of an adverse decision, i.e., debarment, by the Department. We question the propriety of such an order in view of the fact that plaintiff's complaint did not present a justiciable controversy in the first instance, and that plaintiff would still be required to exhaust its administrative review remedies prior to being entitled to judicial review.

For the reasons stated, the order of the trial court dismissing plaintiff's complaint is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.