(No. 93220.—

JOHN BEAHRINGER, Appellee, v. JAMES H. PAGE *et al.*, Appellants.

*Opinion filed April 3, 2003.—Rehearing denied June 2, 2003.*

KILBRIDE, J., dissenting.

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield (Joel D. Bertocchi, Solicitor General, and Carol A. Cera and Brian F. Barov, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Scott Hodes, Gary L. Starkman, Michael A. Chabraja

and Colleen E. Young, of Ross & Hardies, of Chicago, for appellee, and John Beahringer, of Sumner, appellee *pro se*.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, John Beahringer, is an inmate in the custody of the Illinois Department of Corrections. According to plaintiff's brief: "When a recalcitrant bureaucracy failed to respond to his grievance over the confiscation of his art materials, he filed a *pro se* complaint for declaratory and injunctive relief against Department officials for a determination \*\*\* that the confiscation violated his [constitutional] rights."

The circuit court of Will County dismissed the complaint for failure to state a cause of action. With one justice dissenting, the appellate court reversed and remanded for further proceedings. No. 3—00—0720 (unpublished order under Supreme Court Rule 23).

We allowed defendants' petition for leave to appeal (177 Ill. 2d R. 315(a)). We now hold that plaintiff failed to allege sufficient facts showing that he exhausted the Department's grievance procedure prior to filing his complaint. Accordingly, we reverse the appellate court and affirm the circuit court.

BACKGROUND

In determining whether to allow a motion to dismiss, a court must take as true all well-pled allegations of fact contained in the complaint and exhibits attached thereto. *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 414 (2001); *Kennedy v. Deere & Co.*, 118 Ill. 2d 69, 71 (1987).

Plaintiff's complaint alleged as follows. Plaintiff has been incarcerated in the Illinois Department of Corrections (IDOC or Department) since 1992. He is scheduled to be released in August 2005. Beginning in 1993, plaintiff actively practiced art while confined at various

correctional centers including Menard, Pontiac, Big Muddy River, Stateville, and Centralia. He was permitted to possess and use in his cell art materials that complied with IDOC safety and security policies. Plaintiff bought art supplies from several of the prison commissaries. Indeed, from October 1998 to August 4, 1999, while confined at Centralia, IDOC employed plaintiff as an art instructor. He was allowed to purchase art supplies from an outside vendor. Over the years, plaintiff has sent his works of art to relatives and friends. According to plaintiff, he "communicates and bonds with his family and friends" through his art.

On August 18, 1999, IDOC transferred plaintiff from Centralia to disciplinary segregation at Stateville. He was released from discipline on February 3, 2000. IDOC officials informed plaintiff that he would no longer be permitted to possess his art materials. The officials instructed plaintiff to send his art materials home or they would be destroyed. An IDOC official informed plaintiff that Stateville no longer had an art program and that IDOC intended to ban art programs from all of its facilities. Plaintiff's art supplies have been withheld from him since that date. Among plaintiff's confiscated items were paints and paintbrushes; pencils, erasers, pens, and metal calligraphy nibs; drawing paper, poster-board, and canvasses; and a staple remover.

However, as of the filing of plaintiff's complaint, Stateville's commissary sold a limited selection of art materials, many of which were similar to those that IDOC officials confiscated from plaintiff. Also, a number of inmates at Stateville possess art materials and practice art in their cells.

On February 9, 2000, plaintiff filed an emergency grievance. On February 10, James Page, the warden at Stateville, denied plaintiff's emergency grievance because it failed to state the requisite facts for consideration as

an emergency pursuant to Department regulations. The warden directed plaintiff to file the grievance with his counselor.

On February 11, Stateville's personal property officer issued to plaintiff a disposal-of-personal-property notice. The notice required plaintiff to have a visitor pick up his art materials or to send the materials out of the prison at his expense. If plaintiff failed to do either within 60 days, the art materials would be destroyed.

On February 29, plaintiff filed a grievance through the Department's established grievance procedure. His counselor received the grievance on March 4 and referred it to a grievance officer on March 11. As of the filing of plaintiff's complaint, plaintiff has not received a response to his grievance.

Also, on March 1, plaintiff wrote a personal letter to Donald Gaetz, the assistant warden of operations at Stateville. On March 6, plaintiff wrote a letter to Donald Snyder, Jr., the director of IDOC. In these letters, plaintiff described the circumstances surrounding the confiscation and sought the return of his art materials. Plaintiff received no response to his letters.

On May 6, plaintiff filed in the circuit court of Will County his complaint for declaratory and injunctive relief against Page and Snyder. He alleged as follows. Art "is a clearly established form of speech and expression guaranteed under the First Amendment to the United States Constitution." Defendants, by taking away his art supplies, restricted his ability to communicate with his family and friends through art. Plaintiff sought a declaration that defendants violated his first amendment right to free expression by confiscating his art supplies.

Plaintiff also alleged as follows. He was being permanently deprived of his art materials. Without preliminary injunctive relief, plaintiff would lose the supplies, which he could not afford to replace. Plaintiff

sought a preliminary injunction preventing IDOC from destroying his art materials.

Defendants filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615(a) (West 2000)). Defendants asserted that plaintiff's right to possess his art materials did not override the Department's interests in regulating prisoner conduct. Rather, plaintiff's possession of art materials was within the safety and security authority of IDOC.

Defendants also asserted that a preliminary injunction was inappropriate because plaintiff failed to show that he would be irreparably harmed. Defendants argued that plaintiff had the option of sending his art materials home, where they could be retrieved upon his release from prison. The circuit court granted defendants' motion to dismiss.

A divided panel of the appellate court vacated the circuit court's dismissal of plaintiff's complaint, granted his request for a preliminary injunction, and remanded the cause for further proceedings. No. 3—00—0720 (unpublished order under Supreme Court Rule 23). The majority concluded that plaintiff's complaint stated a cause of action for declaratory relief because plaintiff alleged a controversy over whether he had a first amendment right to possess and use his art supplies. The majority also concluded that plaintiff was entitled to a preliminary injunction. The majority reasoned: "If the defendants were allowed to destroy his supplies or he was required to send the supplies to a friend or family member, the plaintiff would suffer irreparable harm in that should he succeed on the merits of his petition he would be forced to purchase new supplies."

Justice Breslin dissented. Analyzing the merits of plaintiff's complaint, Justice Breslin concluded that plaintiff could not successfully plead a cause of action for either declaratory or injunctive relief. Justice Breslin

noted that plaintiff's property was confiscated when he was transferred from a minimum security facility to a maximum security facility and placed in segregation. Following plaintiff's release from segregation, Justice Breslin opined, it was the responsibility of IDOC to control plaintiff, and courts should defer to IDOC regarding prison administration. Defendants appealed to this court (177 Ill. 2d R. 315(a)).

## ANALYSIS

This case is before us following the dismissal of plaintiff's claims pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)). A section 2—615 motion attacks the legal sufficiency of a complaint. The motion does not raise affirmative factual defenses, but rather alleges only defects on the face of the complaint. The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996).

Moreover, Illinois is a fact-pleading jurisdiction. A plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted. *Vernon*, 179 Ill. 2d at 344; *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981). We review a dismissal under section 2—615 *de novo*. *Neade v. Portes*, 193 Ill. 2d 433, 439 (2000).

## I. Declaratory Judgment

Defendants contend that plaintiff's complaint failed to state a cause of action for declaratory judgment

because: (1) plaintiff did not exhaust IDOC's grievance procedure prior to filing his complaint, and (2) plaintiff did not allege a first amendment violation. "A court will consider a constitutional question only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994) (and cases cited therein); accord *City of Detroit v. Gould*, 12 Ill. 2d 297, 304 (1957); *Bohnert v. Ben Hur Life Ass'n*, 362 Ill. 403, 408 (1936) ("inasmuch as we have concluded that the complaint did not state a cause of action it becomes unnecessary to pass upon the constitutional questions"). Accordingly, we first consider whether plaintiff was required to exhaust IDOC's grievance procedure prior to filing his complaint and, if so, whether plaintiff pled sufficient facts showing that he had done so. See, *e.g.*, *Bank of Lyons v. County of Cook*, 13 Ill. 2d 493, 497 (1958).

## A. *Exhaustion of Administrative Remedy*

Plaintiff initially responds that defendants waived the issue of whether he exhausted IDOC's grievance procedure. Plaintiff notes that defendants did not raise the exhaustion issue in the circuit court as part of their motion to dismiss. Rather, according to plaintiff, defendants first raised this issue in the appellate court. Plaintiff asserts that defendants' failure to raise this issue in the circuit court constitutes a waiver of this issue.

We disagree. Defendants were the appellees in the appellate court. It is quite established that "the appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court." *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969). Since plaintiff's complaint and attached exhibits provide the requisite factual basis, we will address this issue. See, *e.g.*, *People ex rel. Skinner v. Graham*, 170 Ill. App.

3d 417, 440 (1988); *Coleman v. Hinsdale Emergency Medical Corp.*, 108 Ill. App. 3d 525, 527 (1982).

## 1. Federal Law

Curiously, defendants base their exhaustion contention on *federal* law. Plaintiff expressly seeks declaratory relief pursuant to our declaratory judgment statute, codified in section 2—701 of the Code of Civil Procedure (735 ILCS 5/2—701 (West 2000)). However, defendants assert that plaintiff "sought to vindicate an alleged violation of his federally protected First Amendment rights." Defendants reason: "The appropriate and common vehicle for contesting alleged constitutional rights violations by state officials is through a civil rights action pursuant to 42 U.S.C. § 1983. Under section 1983, a person can obtain declaratory and injunctive relief. *** Thus, Beahringer's action is, in essence, a garden-variety section 1983 lawsuit."

Continuing down this path, defendants invoke the Federal Prison Litigation Reform Act of 1995 (PLRA) (42 U.S.C. § 1997e (2000)), which states in pertinent part:

"(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000).

Defendants contend: "Beahringer cannot obviate the need to comply with the PLRA's exhaustion requirement simply by not mentioning section 1983 in his complaint. *** Beahringer was required to exhaust his administrative remedies under the PLRA."

The appellate court majority noted—and rejected—this argument, observing that "plaintiff's complaint makes it clear that he is requesting declaratory judgment, not relief under section 1983." We agree. Plaintiff's complaint refers neither to section 1983 nor to any other federal law. Defendants attempt to insert federal law

where it does not apply. Legislatures in many other states have expressly adopted the PLRA. See, *e.g.*, Wis. Stat. § 801.02(7)(b) (1994); Mich. Comp. Laws § 600.5503(1) (2000); Mo. Rev. Stat. § 506.384.1 (2002). The Illinois General Assembly has not and this court cannot do so by judicial fiat.

## 2. Declaratory Judgment

However, based on established state law, we conclude that plaintiff must nevertheless exhaust his administrative remedies prior to bringing a declaratory judgment action. The Illinois declaratory judgment statute provides in pertinent part:

> "(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation *** and a declaration of the rights of the parties interested." 735 ILCS 5/2—701(a) (West 2000).

A declaratory judgment "may be obtained by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well." 735 ILCS 5/2—701(b) (West 2000). The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests. *Griffin v. County of Cook*, 369 Ill. 380, 398 (1938) (Stone, J., specially concurring, joined by Farthing, J.); accord *Alicea v. Snyder*, 321 Ill. App. 3d 248, 253 (2001).

The declaratory judgment procedure allows " ' "the court to take hold of a controversy one step sooner than

normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting." ' " *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983), quoting *Buege v. Lee*, 56 Ill. App. 3d 793, 798 (1978), quoting Ill. Ann. Stat., ch. 110, par. 57.1, Historical & Practice Notes, at 132 (Smith-Hurd 1968). "The declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right. [Citation.] The remedy is used to afford security and relief against uncertainty so as to avoid potential litigation." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995); accord *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 452 (1979).

A declaratory judgment action is purely statutory and is to be liberally construed. However, the provisions of the statute must be strictly complied with. *Freeport Motor Casualty Co. v. Tharp*, 406 Ill. 295, 299 (1950); see *Lihosit v. State Farm Mutual Automobile Insurance Co.*, 264 Ill. App. 3d 576, 579 (1993). In interpreting the Illinois declaratory judgment statute, Illinois courts may look to the decisions of other states in interpreting the Uniform Declaratory Judgments Act (12 U.L.A. 309 (1996)). *AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684, 693 (1998); see 1 W. Anderson, Actions for Declaratory Judgments § 5 (2d ed. 1951).

A declaratory judgment action is strictly remedial. The statute does not create substantive rights or duties, but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights. *Berk v. County of Will*, 34 Ill. 2d 588, 591 (1966); see Ill. Ann. Stat., ch. 110, par. 2—701, Historical & Practice Notes, at 6 (Smith-Hurd 1983).

"Because the declaratory judgment procedure does not replace but merely adds to existing remedies a form of judgment to declare the rights of the parties, the existence of other remedies does not preclude judgment for declaratory relief, even though such other remedies may be equally effective." Ill. Ann. Stat., ch. 110, par. 2—701, Historical & Practice Notes, at 6-7 (Smith-Hurd 1983); accord *La Salle National Bank v. County of Cook*, 57 Ill. 2d 318, 322 (1974); *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.*, 79 Ill. App. 3d 799, 804 (1979). For example, in *Kaske*, 96 Ill. 2d at 305-06, this court concluded that a police officer need not provoke an administrative disciplinary proceeding against himself so as to provide a forum to challenge an order of his police chief; rather, the officer could seek declaratory relief.

However, where it is alleged that a facially valid statute, ordinance, or administrative rule "is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board." *Bank of Lyons*, 13 Ill. 2d at 495; accord *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308-09 (1989) (collecting cases). Courts apply the exhaustion doctrine to declaratory judgment actions. See, *e.g., Bank of Lyons*, 13 Ill. 2d at 494; *AEH Construction, Inc. v. Department of Labor*, 318 Ill. App. 3d 1158, 1163-64 (2001); *Union Bank v. Blackstone Sunbury-Nevada Grain Co.*, 254 Ill. App. 3d 206, 207-08 (1993); *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 749 (1992); *Salk v. Department of Registration & Education*, 123 Ill. App. 2d 320, 324 (1970) (collecting cases).

Referring to the "actual controversy" requirement of a declaratory judgment action, this court has explained:

" 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or *premature*, so as to require the

court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." (Emphasis added.) *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). The principles of ripeness and exhaustion of remedies are closely related in that both involve generally the prematurity of an action. *AEH Construction*, 318 Ill. App. 3d at 1163; *Schwanke*, 241 Ill. App. 3d at 748.

The exhaustion doctrine applies where a claim is cognizable in the first instance by an administrative agency. If the agency is vested by the legislature with the authority to administer the statute, declaratory relief is not available; judicial interference must be withheld until the administrative process has run its course. *Schwanke*, 241 Ill. App. 3d at 749; see also *AEH Construction*, 318 Ill. App. 3d at 1163. Among the policy considerations underlying the exhaustion doctrine are that it allows the agency to fully develop and consider the facts of the cause and to utilize its expertise; it protects the agency processes from impairment by avoidable interruptions; it gives the aggrieved party the opportunity to succeed before the agency; and it allows the agency to correct its own errors, thus conserving valuable judicial resources. *Schwanke*, 241 Ill. App. 3d at 749; see also *Union Bank*, 254 Ill. App. 3d at 208-09.

These policy considerations are manifest in prison administration. Courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform. The problems of prisons in this country are complex and intractable, and are not readily susceptible of resolution by judicial decree. Operating a prison is an extremely difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are exclusively within the province of the legislative and executive branches of government. Moreover, since prison administration is a task that has been committed to those branches, separation of powers concerns advise a policy

of judicial restraint. *Turner v. Safley*, 482 U.S. 78, 84-85, 96 L. Ed. 2d 64, 76, 107 S. Ct. 2254, 2259 (1987); see *In re Washington*, 65 Ill. 2d 391, 399 (1976). Accordingly, courts afford wide-ranging deference to the decisions of prison administrators. 72 C.J.S. *Prisons* § 9(a) (1987); 60 Am. Jur. 2d *Penal & Correctional Institutions* § 121, at 978 (2003).

Based on the above principles: "The doctrine of exhaustion of administrative remedies applies to grievances lodged by prisoners, even when the grievances involve an alleged constitutional violation." 72 C.J.S. *Prisons* § 9(b), at 421 (1987). See, *e.g., In re Cliff*, 264 A.D.2d 892, 696 N.Y.S.2d 84 (1999); *Broeckel v. State of Alaska Department of Corrections*, 941 P.2d 893 (Alaska 1997); *In re Alamin*, 241 A.D.2d 586, 660 N.Y.S.2d 746 (1997); *Buehl v. Pennsylvania Department of Corrections*, 160 Pa. Commw. 1, 635 A.2d 217 (1991).

In the present case, the Unified Code of Corrections mandates that IDOC: establish rules and regulations for the protection of the person and property of Department employees and inmates (730 ILCS 5/3—7—1, 3—7—4 (West 2000)); and, under rules and regulations, record and receipt all personal property not allowed to committed persons (730 ILCS 5/3—4—3(a) (West 2000)). The Code also empowers IDOC to investigate inmate grievances (730 ILCS 5/3—2—2(1)(h) (West 2000)).

Implementing these legislative mandates, the Department promulgated a coherent and systematic grievance procedure. 20 Ill. Adm. Code §§ 504.800 through 504.870 (2000). The process begins by first requiring an inmate to attempt to resolve problems through his or her counselor. If the problem cannot be resolved informally, the process proceeds to the filing of a formal written grievance. 20 Ill. Adm. Code § 504.810 (2000). At the time of plaintiff's grievance, a grievance officer was required to consider the grievance, call witnesses if ap-

propriate, and report his or her written findings to the chief administrative officer "within 30 days after the grievance is received *** whenever possible." In turn, the chief administrative officer was required to issue a written decision "within 15 days after receiving the [grievance officer's] report, whenever possible." 20 Ill. Adm. Code § 504.830 (2000). This administrative process continues with appeals to the Director of Corrections and possibly to an administrative review board. 20 Ill. Adm. Code § 504.850 (2000). Also, according to Stateville's internal rules, if the inmate timely grieves the confiscation of his or her property, which plaintiff did in this case, the property will be retained at the facility and will not be destroyed until the grievance procedure has been completed. Stateville Institutional Directive 05.10.110K3 § II(V).

We turn to plaintiff's complaint for declaratory and injunctive relief. Plaintiff expressly states therein that he filed his complaint prior to receiving a response from his grievance officer. Plaintiff's failure to exhaust his available administrative remedies is apparent from the face of the complaint.

However, plaintiff claims that he exhausted his administrative remedies. Plaintiff contends that under the procedure in effect at the time of his grievance, "he was required to wait a minimum of 45 days prior to filing suit." According to plaintiff, approximately 60 days had elapsed without a response to his grievance when he filed his suit.

We conclude that plaintiff did not exhaust this administrative remedy. The relevant time requirements include the phrase "whenever possible." 20 Ill. Adm. Code § 504.830 (2000). The time frames for the consideration of grievances were directory and not mandatory. See *Village of Park Forest v. Fagan*, 64 Ill. 2d 264, 267-68 (1976); *Carrigan v. Illinois Liquor Control Comm'n*, 19

Ill. 2d 230, 233-34 (1960). Accordingly, they did not grant plaintiff an automatic right of action. Plaintiff argues delay and not unavailability. He has not pled the exhaustion of administrative remedies. We express no opinion as to the amount of time that must elapse before a petition under IDOC's grievance procedure can be considered futile.

We observe plaintiff's allegation in his complaint "that the [standard] grievance process is futile" in his case because it was the warden who initially approved the confiscation, and grievances filed against warden-approved actions historically have failed. Illinois recognizes a limited "futility" exception to the exhaustion of administrative remedies doctrine. A party will not be required to exhaust his or her administrative remedies when it would be patently useless to do so. *Northwestern University v. City of Evanston*, 74 Ill. 2d 80, 88 (1978). "However, the fact that there are clear indications that the agency may or will rule adversely is generally inadequate to terminate the administrative process or to avoid the exhaustion requirement." *Castaneda*, 132 Ill. 2d at 328 (and cases cited therein); see *AEH Construction*, 318 Ill. App. 3d at 1163. Further, mere conclusions of fact or law unsupported by specific factual allegations are insufficient to state a cause of action. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996); *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 509-10 (1988).

Plaintiff's declaratory judgment action was properly dismissed for failure to sufficiently plead that he exhausted his administrative remedies. Our holding obviates discussion of plaintiff's first amendment claim. See *Gould*, 12 Ill. 2d at 304.

## II. Preliminary Injunction

Having concluded that the circuit court correctly dismissed plaintiff's declaratory judgment action, we

must next determine whether the appellate court properly granted plaintiff a preliminary injunction to prevent the destruction of plaintiff's art materials.

The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of a cause. It is an extraordinary remedy which should apply only in situations where an extreme emergency exists and serious harm would result if the injunction is not issued. A party seeking a preliminary injunction must establish that: (1) a clearly ascertained right in need of protection exists; (2) irreparable harm will occur without the injunction; (3) there is no adequate remedy at law for the injury; and (4) there is a likelihood of success on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365-66 (2001); *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992).

In this case, plaintiff has not demonstrated a need for a preliminary injunction. As we previously observed, plaintiff's art supplies will be retained at the facility and will not be destroyed until the grievance procedure has been completed. See Stateville Institutional Directive 05.10.110K3 § II(V). Since plaintiff has not shown irreparable harm, injunctive relief is unavailable.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Will County is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority opinion. The majority holds that plaintiff cannot maintain an action for declaratory judgment because he failed to exhaust his administrative remedies. Three years after plaintiff filed his initial grievance, defendants have yet to respond to

plaintiff's grievance, and defendants offer no justification. The majority essentially rewards the Department of Corrections for engaging in practices that effectively eliminate the relief authorized by the administrative remedies, while penalizing plaintiff for availing himself of the only other relief available.

I disagree with the majority's determination that the time requirements for consideration of grievances are directory rather than mandatory. A statute that specifies the time for performance of an official duty is considered directory *only* when the rights of the parties cannot be injuriously affected by the failure to act within the time indicated. *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233 (1960). When the disregard of a time requirement would injuriously affect private rights, the provision is mandatory. *Carrigan*, 19 Ill. 2d at 233. A proper analysis must consider whether the time requirement prescribed is intended for the protection of the person filing the grievance and to prevent a sacrifice of his property. See *People v. Jennings*, 3 Ill. 2d 125, 127 (1954). In this case, the lengthy delay has injuriously affected plaintiff's private rights, making the time requirement mandatory.

I also believe that defendants have waived the exhaustion of remedies defense. The majority cites the rule that " 'the appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court.' " 204 Ill. 2d at 370, quoting *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969). Curiously, the majority departs from a recent case where this court held that a defendant-appellee's failure to raise the exhaustion of remedies issue in the trial court constituted a waiver of the issue on appeal. See *People v. Fiorini*, 143 Ill. 2d 318, 337 (1991), citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988).

In the instant case, defendants did not present the issue of exhaustion of remedies in the circuit court, either in written motions, memoranda, or oral argument. Defendants did not raise exhaustion of remedies as an affirmative defense, and plaintiff was never put on notice that such proof was required. Accordingly, I believe that it is inappropriate to consider the exhaustion of remedies issue for the first time on appeal as a basis for affirming the decision of the circuit court. See *Greer*, 122 Ill. 2d at 509.

Finally, I believe that the allegations in plaintiff's *pro se* complaint were sufficient to state a claim for declaratory judgment. To bring a declaratory judgment action, the plaintiff must allege in sufficient detail an actual and legal controversy between the parties and must demonstrate that the plaintiff is interested in the controversy. 735 ILCS 5/2—701(a) (West 2000); *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 382-83 (1997); *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 173 (1995). When reviewing a motion to dismiss, the court must take all well-pleaded facts in the plaintiff's complaint and supporting documentation as true. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). "A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover." *Bryson*, 174 Ill. 2d at 86-87.

Here, plaintiff's complaint alleged facts that show a controversy between himself and the defendants regarding his ability to possess and use his art supplies. Plaintiff further requested a declaration that he had a first amendment right to possess and use those supplies. I believe that the appellate court correctly determined that the allegations in plaintiff's *pro se* complaint were sufficient to state a claim for declaratory judgment. Accordingly, I would affirm the appellate court's order vacating the

trial court's dismissal of plaintiff's complaint and remand the case for further proceedings. I therefore respectfully dissent.