# Illinois Official Reports

## Appellate Court

*Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. ST. PAUL LUTHERAN CHURCH, an Illinois Religious Corporation; and HOPE FARNEY, as Independent Administrator of the Estate of KITTY MULLINS, Deceased, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-15-0966 |
| Filed<br>Modified upon<br>denial of rehearing | October 14, 2016<br><br>January 4, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Ford County, No. 15-MR-4; the Hon. Matthew John Fitton, Judge, presiding. |
| Judgment | Appeal dismissed in part and affirmed in part. |
| Counsel on Appeal | Robert Marc Chemers and Richard M. Burgland (argued), of Pretzel & Stouffer Chtrd., of Chicago, for appellant.<br><br>Thomas J. Pliura (argued), of LeRoy, for appellee St. Paul Lutheran Church.<br><br>Michael J. Gravlin (argued), Sean Mussey, and Jakub D. Banaszak, of Law Offices of Michael J. Gravlin LLC, of Chicago, for appellee Hope Farney. |

Panel          JUSTICE APPLETON delivered the judgment of the court, with opinion.

Justices Holder White and Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1     This is an action for declaratory judgment. The plaintiff is Pekin Insurance Company (Pekin), and the two defendants are St. Paul Lutheran Church of Roberts, Illinois (church), and Hope Farney, the independent administrator of the estate of Kitty Mullins, deceased.

¶ 2     In a case separate from this one—the underlying tort case—Farney is suing the church for wrongful death, alleging that a church employee, Matthew Geerdes, while using his personally owned car for church business, negligently crashed into Mullins's car, causing her death.

¶ 3     Pekin had issued the church an insurance policy, which covered bodily injury caused by the use of a non-owned auto for church business. In the present case, though, Pekin sought a declaratory judgment that, for two reasons (corresponding to counts I and II of its amended complaint for declaratory judgment), it had no contractual duty to defend its insured, the church, in Farney's wrongful-death lawsuit. First, at the time of the accident, Geerdes was on his way to his other job, his job with University Lutheran Ministry of Bloomington-Normal, Illinois (University Lutheran); thus, Pekin contends, he was not using his car for church business, and there is no business liability coverage under the Pekin policy. Second, Country Mutual Insurance Company (Country Mutual) already was defending the church pursuant to the automobile liability policy it had issued to Geerdes, and the policy Pekin had issued to the church stipulated that the business liability coverage was excess coverage when it came to the use of a non-owned auto for church business and that as long as the primary insurer (in this case, Country Mutual) was defending the church, Pekin had no duty to do so.

¶ 4     The two defendants in this declaratory judgment action, the church and Farney, moved to dismiss Pekin's amended complaint for declaratory judgment on the ground of failure to state a cause action. See 735 ILCS 5/2-615 (West 2014). The trial court granted their motions without prejudice. Afterward, when Pekin moved for permission to file a second amended complaint for declaratory judgment, the court not only denied permission to do so but stated that this time its ruling was "with prejudice." Pekin appeals the dismissal of its amended complaint and, alternatively, the denial of permission to file the proposed second amended complaint.

¶ 5     We conclude that count I of the amended complaint for declaratory judgment is premature and that count II is moot. Because Pekin is silent as to count III, it has forfeited any challenge to the dismissal of that count. We find no abuse of discretion in the denial of permission to file the proposed second amended complaint, since it would not have cured the deficiencies in the amended complaint. Therefore, we dismiss this appeal as to count II of the amended complaint for declaratory judgment, and we otherwise affirm the trial court's judgment.

## I. BACKGROUND

### A. Pekin's Amended Complaint for Declaratory Judgment

In its amended complaint for declaratory judgment, Pekin made the following allegations.

#### 1. *The Insurance Policy That Pekin Issued to the Church*

Pekin issued an insurance policy, No. 00BU11178, to the church. This policy, which had an effective policy period of October 24, 2012, to October 24, 2013, provided business liability coverage for " 'bodily injury' or 'property damage' arising out of the use of any 'non-owned auto' in [the church's] business by any person other than [the church]."

This business liability coverage was subject to the following condition pertaining to other insurance:

> "H. OTHER INSURANCE
>
> (1) If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.
>
> (2) Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.
>
> (3) When this insurance is excess, we will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers."

#### 2. *The Underlying Lawsuit*

In Farney v. Geerdes, Ford County Circuit Court case No. 13-L-14, Farney, as the special administrator of Mullins's estate, filed a third amended complaint against four defendants: Matthew Geerdes, Larry Thorndyke, University Lutheran, and the church. In her third amended complaint, Farney invoked the Wrongful Death Act (740 ILCS 180/2 (West 2012)) and the Survival Act (755 ILCS 5/27-6 (West 2012)), alleging as follows. On October 9, 2013, at 9:20 a.m., Geerdes was driving a motor vehicle in Peach Orchard, Illinois, when he negligently ran into a motor vehicle driven by Mullins, who suffered fatal injuries. At the time of the accident, Geerdes was talking on the phone with Thorndyke, in violation of section 12-610.2 of the Illinois Vehicle Code (625 ILCS 5/12-610.2 (West 2012)). Thorndyke was the one who had made the phone call to Geerdes, and when telephoning Geerdes, he knew Geerdes was driving. Thus, Thorndyke negligently distracted Geerdes from the task of driving, causing the fatal accident. At the time of the phone call and the accident, Thorndyke was acting within the scope of his employment as an employee of the church, and Geerdes was acting within the scope of his employment as an employee of both the church and University Lutheran. Farney sought to hold the church and University Lutheran vicariously liable for the alleged negligence of their agents.

#### 3. *The Insurance Policy That Country Mutual Issued to Geerdes*

Country Mutual had issued insurance policy No. A12A3355557 to Geerdes. This policy provided automobile liability coverage on a primary basis and had an effective policy period of July 3, 2013, to January 3, 2014.

¶ 16    The Country Mutual policy covered not only Geerdes but "anyone else" liable for his acts or omissions in the operation of an insured vehicle. Under the heading of "Persons Insured," the policy provided:

"Under this Section of the policy, an *insured* is:

"1. With respect to an *insured vehicle*:

a. *you* and any resident of the same household as *you*;

b. anyone using an *insured vehicle* with your permission or the permission of an adult *relative*;

c. anyone else, but only with respect to liability resulting from acts or omissions of an *insured* as defined in a. or b. above." (Emphases in original.)

¶ 17                           4. *Tendering the Defense*

¶ 18    The church tendered the defense to Pekin. Pekin accepted the tender, but with reservations. Afterward, Pekin tendered the defense to Country Mutual, which accepted the tender without reservations.

¶ 19                  5. *The Judicial Declarations That Pekin Sought in Its*
                        *Amended Complaint for Declaratory Judgment*

¶ 20    Pekin's amended complaint for declaratory judgment had three counts.

¶ 21    In count I, Pekin alleged that "Geerdes, who was operating his own motor vehicle, was not using his motor vehicle in connection with Church business." Therefore, as to count I, Pekin requested a declaratory judgment that (1) "for the matters alleged in [case No. 13-L-14]," it was "not liable under its policy of insurance issued to [the church]" and (2) it was "not obligated to defend [the church] in [case No. 13-L-14]."

¶ 22    Count II sought a declaration only that Pekin lacked a duty to defend the church. Pekin alleged that, as an excess insurer, it was "not obligated to defend the Church as there [was] other insurance covering the same loss, namely, Geerdes'[s] personal automobile policy with Country Mutual, and Country Mutual ha[d] accepted the Church's defense without reservation." Therefore, as to count II, Pekin requested a declaratory judgment that because Pekin was an excess insurer rather than a primary insurer, and because Country Mutual, as the primary insurer, was defending the church without reservation, the "Other Insurance" provision of the policy exempted Pekin of any obligation to defend the church.

¶ 23    In the final count of the amended complaint for declaratory judgment, count III, Pekin alleged that the policy it had issued to the church included a provision for the reimbursement of defense costs if Pekin " 'initially defend[ed] an insured or [paid] for an insured's defense but later determine[d] that the claim [was] not covered under this insurance.' " Therefore, as to count III, Pekin requested a declaratory judgment that the church had to "reimburse Pekin *** for all of the defense costs and other expenses incurred on *** behalf [of the church] in connection with [case No. 13-L-14]."

¶ 24    Also, in all three counts, Pekin alleged, "on information and belief," that defendants disagreed with the positions Pekin took in its amended complaint. By Pekin's understanding, defendants took the position "that the allegations contained in the action filed by Farney [were] covered under Pekin's policy of insurance," a position with which Pekin disagreed. Consequently, Pekin alleged, "an actual and justiciable controversy exist[ed] between the

parties," a controversy that "[might] be determined by a judgment or order of [the trial court]."

## B. Defendants' Motions to Dismiss
### the Amended Complaint for Declaratory Judgment

#### 1. *The Church's Motion for Dismissal*

Pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), the church moved to dismiss, with prejudice, Pekin's amended complaint for declaratory judgment.

The church argued that count I was legally insufficient because "[t]he allegations of the Farney complaint squarely [brought] the asserted claim under the scope of the coverage provided by [the church's] policy, irrespective of any denials by [Pekin] herein or by [the church] in answer to the underlying complaint." The church cited *Maxum Indemnity Co. v. Gillette*, 405 Ill. App. 3d 881, 885 (2010), and quoted *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 359 Ill. App. 3d 872, 884 (2005), for the principle that, "[i]n determining whether an insurer ha[d] a duty to defend its insured in an underlying lawsuit, the court [had to] look to the allegations in the underlying complaint and compare those allegations to the relevant coverage provisions of the insurance policy."

The church argued that, for two reasons, count II was legally insufficient:

"15. Firstly, if Country [Mutual] is defending this claim without a reservation of rights, there is no active dispute between Pekin and [the church]. Pekin is only seeking an advisory ruling from this Court to the effect that, 'should Country [Mutual] not defend [the church] in the Farney claim, Pekin would still not be obligated to defend the claim.' This Court cannot and should not issue an advisory opinion on an unripe claim. ***

16. Secondly, Country [Mutual] has accepted the tender and is defending [the church] in the underlying action, but the indemnity limit on the Country [Mutual]/Geerdes policy is only $100,000.00. On information and belief, Country [Mutual] has tendered that limit to Farney. Farney has not yet accepted the tender as doing so without releasing or waiving a cause of action against the remaining defendants would require additional efforts not yet accomplished.

17. It is anticipated, however[,] that once [Country Mutual's] limit has been exhausted, it will have no remaining obligation or intention to defend [the church]. At that time, Pekin's complaint may again become ripe for consideration by the Court. But, Pekin's defense to coverage will be no more tenable than this frivolous claim is now. Therefore dismissal with prejudice is appropriate."

(Pekin points out that, actually, Geerdes's policy says: " '[Country Mutual's] duty to settle or defend ends when the limits of liability stated on the declarations page have been exhausted by payment of any *judgment or settlement*.' " (Emphasis in original.) Thus, Pekin explains, Country Mutual's voluntary payment of $100,000—the mere exhaustion of the policy limit—actually would not end Country Mutual's duty to defend its insureds; the payment would have to be pursuant to a judgment or settlement. See *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 395 (1982); *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 542 (2000). This is because the duty to defend and the duty to indemnify are separate and distinct, the former duty being broader than the latter. *Conway*, 92 Ill. 2d at 394. "[S]ince

the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend." *Id.*)

¶ 30                                 2. *Farney's Motion for Dismissal*

¶ 31        Farney likewise moved to dismiss the amended complaint for declaratory judgment on the ground that it failed to state a cause of action. See 735 ILCS 5/2-615 (West 2014). In her motion, Farney pointed out that, under the supreme court's decision in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991), an insurer's duty to defend the insured depended solely on a comparison of the underlying complaint with the insurance policy. The supreme court said:

> "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.]" (Emphases in original.) *Id.*

¶ 32        Farney argued that, far from being clear, from the face of the underlying complaint, that her claim was outside the coverage of the policy Pekin had issued to the church, her claim clearly was within the business liability coverage of that policy, for Geerdes allegedly was driving his car on church business at the time of the accident. The underlying complaint in case No. 13-L-14 (more precisely, the third amended complaint) alleged that Mullins's death had resulted from the negligent operation of a motor vehicle by Geerdes while he was employed by the church and while he was acting within the scope of that employment. Specifically, the third amended complaint alleged that, at the time of the accident, Geerdes was substantially within the authorized time and space limits of his employment, he was serving the interests of the church, and the church directly supervised and controlled him. The policy issued by Pekin applied to bodily injury arising from the church's use (that is to say, its agent's use) of a non-owned automobile in the church's business.

¶ 33        But what about the "Other Insurance" provision of the church's insurance policy, the provision that Pekin invoked in count II of its amended complaint for declaratory judgment? Farney asserted:

> "The Pekin Insurance policy provision 'Other Insurance' does not remove Hope Farney's Complaint from inside the borders of the Pekin Insurance policy coverage. Further, the 'Other Insurance' provision does not relieve Pekin *** from their obligation to defend [the] [c]hurch as the allegations of the Complaint remain clearly within the insurance policy coverage. Pekin *** fails to demonstrate why coverage does not apply or their duty to defend is relieved based on this provision. The 'Other Insurance' provision has no bearing as to whether the Pekin Insurance policy applies or whether Pekin *** must defend [the] [c]hurch, which are the questions that must be answered by [Y]our Honor. Because the 'Other Insurance' provision does not affect the applicability of coverage or the duty to defend, Plaintiff's Amended Complaint for Declaratory Judgment is substantially insufficient at law and must be dismissed with prejudice."

¶ 34                              3. *Pekin's Response to the Motions for Dismissal*

¶ 35         In its response to the motions for dismissal, Pekin conceded that, "ordinarily," when deciding whether an insurer had a duty to defend its insured, a court should confine itself to comparing the allegations of the underlying complaint with the provisions of the insurance policy. Pekin noted, however, that, "under certain circumstances," a court might "look beyond the underlying complaint" when determining an insurer's duty to defend. In this respect, Pekin quoted the supreme court:

> " '[I]f an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit [citations] ***. If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. *To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.*' " (Emphasis in original.) *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 461 (2010) (quoting *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983)).

¶ 36         On the authority of that passage from *Wilson*, Pekin requested the trial court to look beyond Farney's complaint and consider deposition testimony by Geerdes that, at the time of the accident, he was not using his personal automobile for church business but, instead, was en route to his other job, his job with University Lutheran. Pekin argued that the consideration of this testimony would be perfectly consistent with *Wilson* because "a jury could find that Geerdes was acting as the Church's agent or employee while *talking on the phone* without finding that Geerdes was *using his vehicle* in connection with Church business." (Emphases in original.) Thus, by Pekin's reasoning, "[a] finding in this action that Geerdes was not using his vehicle in the Church's business when he struck Mullins [would] not collaterally impact Farney's *respondeat superior* claim."

¶ 37         But if the trial court was concerned that the judicial declarations Pekin sought in count I would collaterally estop Farney in her tort case, Pekin requested, as an alternative, the declaration it sought in count II: that the "Other Insurance" provision, together with Country Mutual's unreserved assumption of the defense, negated Pekin's duty to defend the church. If the trial court "rule[d] in Pekin's favor as to [c]ount II, Pekin [would] dismiss [c]ount I without prejudice and with leave to replead." As far as Pekin was concerned, the relief in count II would suffice for the time being.

¶ 38         Pekin disagreed with the church that count II was moot, considering that the church had tendered the defense to Pekin and had communicated to Pekin no formal withdrawal of the tender. Pekin argued: "Since the Church has not withdrawn its tender of defense from Pekin, there is a live controversy whether Pekin has a current duty or obligation to defend the Church in the *Farney* action."

¶ 39         The other defendant in the declaratory judgment action, Farney, did not regard this question as moot; she maintained that, despite the "Other Insurance" provision and Country

Mutual's acceptance, without reservation, of Pekin's tender of the defense, Pekin still had a duty to defend the church.

¶ 40                    4. *The Trial Court's Ruling on the Motions for Dismissal*

¶ 41        On May 19, 2015, the trial court granted defendants' motions to dismiss Pekin's amended complaint for declaratory judgment, but the court did so "without prejudice."

¶ 42                    C. Pekin's Motion for Reconsideration

¶ 43                    1. *The Arguments Pekin Made*

¶ 44        Pekin moved for reconsideration of the dismissal of its amended complaint for declaratory judgment. Pekin argued it had pleaded the three elements of an action for declaratory judgment—(1) a plaintiff with a tangible legal interest, (2) a defendant with an opposing interest, and (3) an actual controversy between the parties concerning these interests (*Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003))—and that, instead of challenging the legal sufficiency of the amended complaint for declaratory judgment, defendants had gone beyond the scope of a section 2-615 motion by challenging the merits of the amended complaint, at least when it came to count I. In Pekin's view, the trial court had erroneously accepted defendants' invitation to consider the merits of count I instead of evaluating its legal sufficiency.

¶ 45        As for count II of the amended complaint, Pekin disagreed it was moot. Pekin argued:

> "To the contrary, the very fact that Country Mutual undertook to defend the Church is exactly what makes the Count ripe for adjudication, that is, another insurer has admitted that it owes a duty to defend the Church, and the Pekin policy provides in that scenario, Pekin has no duty to defend. At the very least, Pekin sufficiently pled facts establishing that an actual controversy exists between Pekin, which claims it has no duty to defend based on the other insurance provisions, and the Defendants, who claim that Pekin owes a duty to defend the Church in the *Farney* action."

¶ 46                    2. *The Church's Response to*
                    *Pekin's Motion for Reconsideration*

¶ 47        The church filed a memorandum in opposition to Pekin's motion for reconsideration. In its discussion of count I, the church did not specifically respond to Pekin's quotation from *Wilson*; the church merely continued to insist "the law [was] crystal clear" that, "in determining whether an insurer has a duty to defend its insured in an underlying lawsuit, the court must look to the allegations in the underlying complaint and compare those allegations to the relevant coverage provisions of the insurance policy."

¶ 48        The church also continued to insist that count II was moot. The church said:

> "If Country [Mutual] is defending this claim without a reservation of rights, as is alleged, there is no active dispute between Pekin and [the church]. Pekin is only seeking an advisory ruling from this Court to the effect that, 'should Country [Mutual] not defend [the church] in the *Farney* claim, Pekin would still not be obligated to defend the claim.' This Court was correct in ruling that it cannot and should not issue an advisory opinion on an unripe claim."

¶ 49                         3. *Farney's Response to*
                    *Pekin's Motion for Reconsideration*

¶ 50        In her response to Pekin's motion for reconsideration, Farney disputed that she had sought a ruling on the merits of Pekin's amended complaint. She argued, rather, it was Pekin that had transgressed the bounds of procedural propriety by offering extrinsic evidence (Geerdes's deposition) in opposition to her section 2-615 motion. She also pointed out that *Beahringer* was not new case law and that Pekin could have cited that case earlier instead of waiting until its motion for reconsideration to do so.

¶ 51                         4. *The Trial Court's Ruling*
¶ 52        On August 18, 2015, the trial court denied Pekin's motion for reconsideration.

¶ 53                    D. Pekin's Motion for Permission To File
                a Second Amended Complaint for Declaratory Judgment

¶ 54        After the denial of its motion for reconsideration, Pekin moved for permission to file a second amended complaint for declaratory judgment "and also [to] immediately stay the declaratory [judgment action], pending resolution of the underlying action." The proposed second amended complaint would have added the following allegation: "On May 14, 2014, Geerdes testified that he was driving to his other job in Normal, Illinois[,] when the alleged accident occurred." A copy of Geerdes's deposition transcript was attached as an exhibit. Otherwise, the proposed second amended complaint mirrored the (now dismissed) amended complaint.

¶ 55        Defendants opposed Pekin's motion for permission to file a second amended complaint, and in doing so, they moved for sanctions against Pekin pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 56        On November 6, 2015, the trial court denied Pekin's motion for permission to file a second amended complaint, this time "with prejudice." At the same time, the court denied defendants' motions for sanctions.

¶ 57        Pekin appealed 14 days later.

¶ 58                             II. ANALYSIS
¶ 59                A. The Three Counts of Pekin's Amended Complaint
                    for Declaratory Judgment, Taken One at a Time
¶ 60                             1. *Count I*
¶ 61        To survive a motion for dismissal pursuant to section 2-615, the complaint, when interpreted in the light most favorable to the plaintiff, must set forth facts which, taken as true, legally entitle the plaintiff to the relief requested in the complaint. *DeHart v. DeHart*, 2013 IL 114137, ¶ 18. The motion points out defects that are apparent on the face of the complaint and that stand in the way of granting the requested relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991).

¶ 62        Defendants argue a defect is apparent on the face of count I of Pekin's amended complaint for declaratory judgment: a violation of the eight-corners rule. We decide *de novo* whether they are correct. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004).

¶ 63        Ordinarily, in a declaratory judgment action on an insurer's duty to defend the insured, courts follow the eight-corners rule, comparing the four corners of the underlying complaint with the four corners of the insurance contract. *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37. "[A] court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy," and "[i]f the facts alleged in the underlying complaint fall within, or *potentially* within, the policy's coverage, the insurer's duty to defend is triggered." (Emphasis in original and internal quotation marks omitted.) *Id.*

¶ 64        We say "ordinarily" because there is an exception to the eight-corners rule: in deciding whether the insurer has a contractual duty to defend the insured, the court may consider factual matters external to the underlying complaint and the insurance policy "as long as [these factual matters] do not bear upon issues in the underlying litigation" (*Millers Mutual Insurance Ass'n of Illinois v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 889 (1989)) or "impact upon the underlying plaintiff's ability to pursue a theory of liability" (*Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 743 (1999)). Thus, the eight-corners rule bars extrinsic evidence only if, as a result of the proposed declaratory judgment, the plaintiff in the underlying lawsuit could be hampered by collateral estoppel. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976). Otherwise, extrinsic evidence is admissible on the question of the insurer's duty to defend the insured. "[T]he only time such [extrinsic] evidence should not be permitted is when it tends to determine an issue crucial to the *** underlying lawsuit" (internal quotation marks omitted) (*Wilson*, 237 Ill. 2d at 461), in which case the requested factual determination is regarded as "premature" (internal quotation marks omitted) (*Peppers*, 64 Ill. 2d at 197).

¶ 65        In its brief, Pekin admits: "[C]onsideration of Geerdes'[s] deposition testimony may tend to determine a factual issue crucial to the underlying lawsuit, namely, whether at the time of the accident, Geerdes was on Church business." We see the same problem. If Farney wanted to argue, in her tort case, that the church was vicariously liable because, at the time Geerdes ran into Mullins, he was driving his car on church business, Farney would find herself collaterally estopped by the declaratory judgment requested in count I of Pekin's amended complaint. See *Mabie v. Village of Schaumburg*, 364 Ill. App. 3d 756, 758 (2006) ("In order to apply collateral estoppel, (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom estoppel is asserted must have been a party or in privity with a party in the prior action; and (3) the prior adjudication must have resulted in a final judgment on the merits.").

¶ 66        Nevertheless, on the authority of *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366 (2009), Pekin maintains that count I states a cause of action, "even if it would require a premature factual determination of a crucial issue in the *Farney* litigation," and "the proper procedural move here was not to dismiss Pekin's complaint altogether, but instead, allow Pekin to amend its Complaint and stay Count I pending resolution of the underlying action," an option that Pekin suggested to the trial court in the hearing on Pekin's motion to file a second amended complaint for declaratory judgment.

¶ 67        *TIG* is distinguishable, however, because in *TIG*, the plaintiff in the underlying action moved for a stay, not the insurer. The plaintiff in the underlying action filed a motion *either* to dismiss the insurer's declaratory judgment complaint as premature *or* to stay the declaratory judgment action. *Id.* at 369. Thus, the plaintiff in the underlying action was willing to live with

the prematurity, and therefore the legal insufficiency (see *Beahringer*, 204 Ill. 2d at 374-75), of the declaratory judgment complaint if the trial court stayed the declaratory judgment action until it ripened, that is, until resolution of the underlying action. The insured, the defendant in the underlying action, appealed the stay (*TIG*, 389 Ill. App. 3d at 367), and the appellate court found no abuse of discretion in staying the declaratory judgment action until the underlying action was resolved (*id.* at 375).

¶ 68    In the present case, by contrast, the church and Farney never intimated they were willing to live with the prematurity (and, therefore, the legal insufficiency) of count I until the underlying action was resolved. They moved for dismissal on the ground of failure to state a cause of action—period. If dismissal was justified on that ground, they were entitled to a dismissal. They were entitled to a correct ruling that was responsive to their motion.

¶ 69    Another way *TIG* is distinguishable is its procedural posture. Just because the appellate court, in *TIG*, found no abuse of discretion in the granting of the stay, it does not logically follow that denying the stay would have been an abuse of discretion, either. The standard of "abuse of discretion" is the most deferential standard of review recognized by the law; a decision will be deemed an abuse of discretion only if the decision is "unreasonable and arbitrary or where no reasonable person would take the view adopted by the circuit court." *Gulino v. Zurawski*, 2015 IL App (1st) 131587, ¶ 64. There could be two opposing but reasonable answers to the same question. When presented with a motion for dismissal on the ground of legal insufficiency, a trial court could reasonably decide it does not want an unripe declaratory judgment action sitting on its docket. After all, an unripe declaratory judgment action lacks an essential element of the cause of action, namely, an actual controversy (*Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977) (a controversy is "actual" only if "the underlying facts and issues of the case are not moot or *premature*" (emphasis added)), and a complaint lacking even a single element is a legally insufficient complaint, subject to dismissal under section 2-615 (*Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 986 (1994); Black's Law Dictionary 538 (7th ed. 1999) (defining "element" as "[a] constituent part of a claim that must be proved for the claim to succeed")). If a count is legally insufficient, we cannot fault the trial court for dismissing it on defendants' motion. Because we agree with the trial court that count I fails to state a cause of action for declaratory judgment—specifically, count I fails to show the controversy is ripe (as Pekin seems to admit)—we affirm the dismissal of that count, and we find no abuse of discretion in the denial of Pekin's request for a stay.

¶ 70                              2. *Count II*

¶ 71    Count II seeks a judicial declaration that, under the "Other Insurance" provision, Pekin has no duty to defend the church in case No. 13-L-14 because Pekin is an excess insurer rather than a primary insurer and because the primary insurer, Country Mutual, has accepted without reservation the tender of the defense. The church insists that count II is moot because the church agrees with Pekin that while Country Mutual defends the church, Pekin has no contractual duty to do so. On appeal, Pekin seems to be asking us to second-guess the church when the church, all but pounding the table, says over and over again it agrees with Pekin in this regard.

¶ 72    If the church says it agrees, it agrees, and that is that. As between Pekin and the church, count II presents no "justiciable [matter]," a constitutional prerequisite of the trial court's

- 11 -

subject-matter jurisdiction. Ill. Const. 1970, art. VI, § 9; see *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002) (defining "a 'justiciable matter' " as "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical *or moot*, touching upon the legal relations of parties having adverse legal interests" (emphasis added)); *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005) ("An appeal is moot if no actual controversy exists ***.").

¶ 73        Farney is a little more difficult to read. On the one hand, she says: "The allegations contained in Farney's complaint are clearly within the insurance policy coverage[,] and the 'Other Insurance' provision does not relieve Pekin from their obligation to defend the Church." On the other hand, beginning with the next sentence of her brief, she says:

> "[S]ince the Church (through Pekin) tendered the defense to Country Mutual, there was no ripe controversy between Pekin and the Church for the court to entertain. *** [B]ecause Country Mutual had undertaken the defense of the Church, any controversy between Pekin and the Church is moot. Pekin's attempt to tack on this theory to their already legally insufficient first count must fail. ***
>
>     *** [B]ecause Country Mutual undertook the Church's defense, Pekin's attempt to argue there is not duty to defend because of Country's tender is premature as there is no actual or ripe controversy between Pekin and the Church, and the circuit court appropriately dismissed Count II of Pekin's Amended Complaint for Declaratory Judgment."

Farney seems to be arguing that, given the allegations of her third amended complaint in case No. 13-L-14, Pekin has a contractual duty to defend the church but that because Country Mutual has undertaken the defense of the church, Pekin's performance of its contractual duty has not yet fallen due (and, possibly, never will fall due). This seems a roundabout way of saying she agrees with Pekin's position, in count II, that as long as Country Mutual is defending the church, Pekin need not do so.

¶ 74        Ultimately, then, it seems that Farney, like the church, regards count II as moot, or as presenting no "actual controversy." *Id.* Therefore, as to count II of Pekin's amended complaint for declaratory judgment, we dismiss this appeal as moot. See *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 379 (1954) ("Since the existence of a real controversy is an essential requisite to appellate jurisdiction, the general rule is that where a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, it will dismiss the appeal *** even though such facts do not appear in the record.").

¶ 75                                     3. *Count III*

¶ 76        In its brief, Pekin makes no argument regarding count III of its amended complaint for declaratory judgment. Therefore, pursuant to the doctrine of procedural forfeiture, we uphold the dismissal of that count. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("Points not argued are [forfeited] ***.").

¶ 77                             B. Denial of Permission to File
                    the Proposed Second Amended Complaint for Declaratory Judgment

¶ 78        A trial court has broad discretion when deciding whether to allow an amendment to a complaint, and we will defer to its decision unless we find an abuse of discretion (*Charleston v.*

*Larson*, 297 Ill. App. 3d 540, 555 (1998)) or, in other words, unless we find the court's decision to be arbitrary or unreasonable (*Gulino*, 2015 IL App (1st) 131587, ¶ 64). The court already had allowed Pekin to amend its complaint, and the latest proposed amendment, the second amended complaint, would not have cured a defect in the amended complaint. Therefore, we find no abuse of discretion in the denial of permission to file the second amended complaint. See *Charleston*, 297 Ill. App. 3d at 555. "[I]f the proposed [amendment] made no substantial change in the complaint previously held bad, the court had a right to reject an attempt to re-litigate the same points already decided, and this is a sufficient basis, in and of itself, to affirm the trial court's rejection of the proposed amendment." (Internal quotation marks omitted.) *Beane v. Millers Mutual Insurance Ass'n of Alton*, 90 Ill. App. 3d 258, 260 (1980).

¶ 79      The proposed second amended complaint was identical to the amended complaint except for one additional allegation: Geerdes himself testified he was driving to his other job, in Normal, Illinois, at the time of the accident. As Pekin admits in its brief, "consideration of Geerdes'[s] deposition testimony may tend to determine a factual issue crucial to the underlying lawsuit, namely, whether at the time of the accident, Geerdes was on Church business." Thus, all the proposed second amended complaint did was enhance or elaborate the defect in count I of the amended complaint. See *Fremont Compensation*, 304 Ill. App. 3d at 743; *Millers Mutual*, 194 Ill. App. 3d at 889.

¶ 80                    C. Dismissal With Prejudice, as Opposed to Without Prejudice

¶ 81      In its petition for rehearing, Pekin argues that the dismissal of its amended complaint for declaratory judgment should have been without prejudice instead of with prejudice. Pekin argues that "[i]f a declaratory judgment is premature because it would decide an ultimate issue of fact in the underlying litigation, the proper resolution is a stay or dismissal without prejudice." In support of that argument, Pekin cites *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 868 (1988), *Batteast v. Argonaut Insurance Co.*, 118 Ill. App. 3d 4, 7 (1983), and *Grinnell Mutual Reinsurance Co. v. Frierdich*, 79 Ill. App. 3d 1146, 1150 (1979).

¶ 82      On the other hand, in *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 739 (1992), the trial court dismissed a declaratory-judgment complaint with prejudice on the ground that it was premature, and the appellate court affirmed the judgment (*id.* at 752). In *Schwanke*, the director of the Department of Labor notified the plaintiff of his "intention to initiate a debarment hearing" to debar the plaintiff from bidding and receiving any public-work contracts, accusing the plaintiff of violating the Prevailing Wage Act (Ill. Rev. Stat. 1991, ch. 48, ¶¶ 39s-1 through 39s-12). *Schwanke*, 241 Ill. App. 3d at 739. Before such an administrative hearing occurred, and before the plaintiff was placed on the debarment list (*id.* at 747), the plaintiff filed a complaint against the director, seeking a declaratory judgment that the plaintiff had not been violating the Prevailing Wage Act (*id.* at 739). The appellate court agreed with the trial court that the declaratory-judgment complaint was premature. The complaint had to "state facts sufficient to show ripeness." Because the complaint "failed to allege or establish the existence of an actual controversy ripe for judicial determination," "[t]he trial court properly dismissed the complaint as being premature" (*id.* at 748) and, again, the dismissal was with prejudice (*id.* at 739). Initially, as in the present case, the trial court dismissed the complaint without prejudice, but the court changed its mind and made the dismissal with prejudice. *Id.* at 752. Commenting on this earlier dismissal, the appellate court had reservations

- 13 -

that the prematurity of a declaratory-judgment action entitled the plaintiff to a dismissal without prejudice:

> "Finally, and parenthetically, we note that although the trial court dismissed plaintiff's complaint as premature, the initial order of dismissal was without prejudice and with leave for plaintiff to move for a stay in the event of an adverse decision, *i.e.*, debarment, by the Department. We question the propriety of such an order in view of the fact that plaintiff's complaint did not present a justiciable controversy in the first instance, and that plaintiff would still be required to exhaust its administrative review remedies prior to being entitled to judicial review." *Id.*

¶ 83    So, if a declaratory-judgment action by an insurer is premature or unripe in that it would decide an important issue of fact in the underlying litigation, what is the correct disposition: dismissal with prejudice (see *id.*) or dismissal without prejudice (see *Shelton*, 176 Ill. App. 3d at 868; *Batteast*, 118 Ill. App. 3d at 7; *Grinnell*, 79 Ill. App. 3d at 1150)?

¶ 84    In answering that question, we begin with the legal significance of the phrase "with prejudice." A dismissal with prejudice amounts to an adjudication on the merits, and such an adjudication can be *res judicata* in a subsequent action. *McGann v. Illinois Hospital Ass'n*, 172 Ill. App. 3d 560, 569 (1988). *Res judicata* does not apply, however, to a subsequent action if the subsequent action is "based on different operative facts" than the previous action. *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 807-08 (1993); see also *Rock River Water Reclamation District v. The Sanctuary Condominiums of Rock Cut*, 2014 IL App (2d) 130813, ¶ 48; *O'Connor v. Greer*, 55 Ill. App. 3d 253, 261 (1977). It follows that if a court dismisses a declaratory-judgment complaint as unripe and designates the dismissal as "without prejudice" for the sake of preserving the plaintiff's right to later bring a declaratory-judgment action that is ripe, the court labors under a misconception. The dismissal of a declaratory-judgment complaint with prejudice, on the ground of unripeness, would not bar the plaintiff from later bringing a declaratory-judgment action that has since become ripe. *Res judicata* would be inapplicable because the complaint in the subsequent declaratory-judgment action would allege facts that the complaint in the previous declaratory-judgment action did not and could not have alleged, namely, facts establishing that the declaratory-judgment action now is ripe. See *Schwanke*, 241 Ill. App. 3d at 748 ("If the complaint does not state facts sufficient to show ripeness, dismissal is proper."). From one action to the other, there would be "different sets of operative facts"—and hence no *res judicata*. *Rock River*, 2014 IL App (2d) 130813, ¶ 48.

¶ 85    Therefore, we agree with *Schwanke* and disagree with *Shelton*, *Batteast*, and *Grinnell*. Unless, in response to a motion for dismissal on the ground of unripeness, the plaintiff in a declaratory-judgment action can demonstrate a present ability to allege facts establishing ripeness, the dismissal should be with prejudice. See *Schwanke*, 241 Ill. App. 3d at 752. Accordingly, we deny Pekin's petition for reconsideration.

¶ 86                                D. The Church's Motion for Sanctions Against Pekin
¶ 87                                   1. *Alleged Frivolity in Count I*
¶ 88    The church moves that we impose sanctions on Pekin pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), which provides, in its first paragraph:

> "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other

action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense."

¶ 89   The church argues: "[W]ithout any basis under the facts or law, Pekin has taken the frivolous position that by denying that Geerdes was *actually* acting within the scope of his employment at the time of the accident (irrespective of the complaint's allegations), it is entitled to deny coverage for defense of the claim." (Emphasis in original.)

¶ 90   Is it really impossible, though, for Pekin to find a foothold from which to plausibly argue the exception to the eight-corners rule? Consider the precise wording of this passage from *Envirodyne Engineers*, which the supreme court quoted with approval in *Wilson*:

" '[W]e find no support for Envirodyne's contention that the court may not look beyond the underlying complaint even in a declaratory proceeding where the duty to defend is at issue. ***. *** [I]f an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it *tends to determine an issue crucial to the determination of the underlying lawsuit ***.*.' " (Emphasis added.) *Wilson*, 237 Ill. 2d at 461 (quoting *Envirodyne Engineers*, 122 Ill. App. 3d at 304-05).

¶ 91   In formal contexts, "crucial" means "decisive or critical." The New Oxford American Dictionary 410 (2001). Whether Geerdes, at the time of the accident, was using his car for church business is *important* to the determination of the church's vicarious liability, but arguably, it is not *decisive* or *critical* to the determination of the church's vicarious liability. The argument could be made, and Pekin does argue, that even if Geerdes was not using his car for church business, the church still could be held vicariously liable if Geerdes—having been encouraged by the church's other agent, Thorndyke, to violate section 12-610.2 of the Illinois Vehicle Code (625 ILCS 5/12-610.2 (West 2012))—used his cell phone for church business and consequently, to Mullins's detriment, let his attention wander from the road.

¶ 92   Ultimately, we are unconvinced by that argument. We conclude that the bar to extrinsic evidence reaches further than indispensable facts. The test is not whether the evidence determines a crucial issue but whether the evidence "tends" to do so (internal quotation marks omitted) (*Wilson*, 237 Ill. 2d at 461), and cases from the appellate court bar evidence that "bear[s] upon issues in the underlying litigation" (*Millers Mutual*, 194 Ill. App. 3d at 889) or "impact[s] upon the underlying plaintiff's ability to pursue a theory of liability" (*Fremont Compensation*, 304 Ill. App. 3d at 743). The supreme court wants to save the plaintiff in the underlying lawsuit from being hampered by the collateral-estoppel effect of the declaratory judgment. *Peppers*, 64 Ill. 2d at 197.

¶ 93    In Pekin's defense, the declaratory judgment could be hampering in different degrees: it could be hampering when it comes to "ultimate facts" (the term that *Peppers* and *Envirodyne Engineers* use (*Peppers*, 64 Ill. 2d at 197; *Envirodyne Engineers*, 122 Ill. App. 3d at 306)), or it could be hampering when it comes to either-or facts that are not "ultimate" but are nevertheless important and *could* potentially be decisive in the underlying lawsuit, depending on what other factual findings the jury makes. See Black's Law Dictionary 612 (7th ed. 1999) (defining "ultimate fact" as "[a] fact *essential* to the claim or the defense" (emphasis added)). *Millers Mutual* and *Fremont Compensation* bar evidence of important facts, not just ultimate facts. *Millers Mutual*, 194 Ill. App. 3d at 889; *Fremont Compensation*, 304 Ill. App. 3d at 743. Nevertheless, "a reasonable, prudent attorney[,] acting in good faith" (*Penn v. Gerig*, 334 Ill. App. 3d 345, 357 (2002)) could perceive this thin fissure in the language of *Wilson*, *Peppers*, and *Envirodyne Engineers*—this reference to "ultimate facts" or "crucial" issues—and try to pry it apart. Thus, count I of the amended complaint for declaratory judgment has a reasonable enough basis in the language of case law that we are unwilling to sanction Pekin for count I. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 94                                    2. *The Alleged Frivolity of Count II*

¶ 95    The church further argues in its motion for sanctions: "Pekin tacked onto its frivolous complaint a second theory that on its face failed to present an actual and ripe controversy between the parties. The trial court properly dismissed the complaint with prejudice. On this point, Pekin again offers no existing law that supports its appeal and no good-faith argument for the extension, modification, or reversal of existing law."

¶ 96    The church must be referring to count II of the amended complaint for declaratory judgment, in which Pekin seeks a declaration that, under the "Other Insurance" provision of the insurance policy it issued to the church, Pekin has no duty to defend the church in Farney's lawsuit while the primary insurer, Country Mutual, is undertaking the defense. As we have already discussed, we agree that the parties have no actual controversy as to count II.

¶ 97    Even so, three things could be said in favor of count II. First, in the proceedings below, Farney took a hard line, insisting that, despite the "Other Insurance" provision and Country Mutual's assumption of the defense, Pekin had a duty to defend the church (she seems to have moderated her position on appeal). Second, Pekin pointed out to the trial court that the church never sent Pekin a formal withdrawal of the tender of defense. Third, the church, like Farney, is capable of sending mixed signals: in paragraph 9 of its motion for sanctions, the church says: "Pekin had no good faith basis under the law to deny defense of the *Farney* claim." How could Pekin lack such a good-faith basis if, as the church maintains, count II presents no actual controversy? We decline to sanction Pekin for count II.

¶ 98                                          3. *Count III*

¶ 99    It does not appear that, in its motion for sanctions, the church makes any argument specifically pertaining to count III of the amended complaint for declaratory judgment. Therefore, for the reasons we have discussed in connection with count I and II, we deny the church's motion for sanctions pursuant to Rule 375(b).

¶ 100                          III. CONCLUSION

¶ 101          We dismiss this appeal as to count II of Pekin's amended complaint for declaratory judgment, and we otherwise affirm the trial court's judgment.

¶ 102          Appeal dismissed in part and affirmed in part.