# Illinois Official Reports

## Appellate Court

---

### *Doxsie v. Illinois Gaming Board*, 2021 IL App (1st) 191875

---

| | |
|---|---|
| Appellate Court Caption | BRENDA DOXSIE, d/b/a BONEYARD BAR, Plaintiff-Respondent, v. THE ILLINOIS GAMING BOARD, an Illinois Administrative Agency, and, in Their Official Capacities, DONALD R. TRACY, Chairman of the Board, HECTOR ALEJANDRE, Board Member, THOMAS A. DUNN, Board Member, DEE ROBINSON, Board Member, STEVEN C. DOLINS, Board Member, and MARK OSTROWSKI, Board Administrator, Defendants-Petitioners. |
| District & No. | First District, Fifth Division<br>No. 1-19-1875 |
| Filed | February 19, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-CH-00173; the Hon. Michael T. Mullen, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Nadine J. Wichern, Assistant Attorney General, of counsel), for petitioners.<br><br>Brenda Doxsie, respondent *pro se*. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    In this interlocutory appeal, the defendants—the Illinois Gaming Board (the Board); the individual members of the Board, Donald R. Tracy, Hector Alejandre, Thomas A. Dunn, Dee Robinson, and Steven C. Dolins; and Mark Ostrowski, the Board's administrator—appeal the decision of the circuit court of Cook County, granting the petition for administrative review brought by plaintiff—Brenda Doxsie, d/b/a Boneyard Bar—and remanding the matter to the Board for an administrative hearing on the plaintiff's application for renewal of her video gaming license. For the reasons that follow, we reverse the order of the circuit court and remand the cause for further proceedings.

¶ 2    The plaintiff filed an application for renewal of a video gaming license as a licensed retail establishment. The minutes of the Board's August 2017 meeting reflect that it received a recommendation from its staff that the plaintiff's application for renewal be denied. Under the heading "Failure to Cooperate/Active Tax Liability/failure to meet/maintain qualifications for Licensure," the minutes state, in reference to the plaintiff's application for renewal: "This location has an Active Tax Liability and does not currently have a valid liquor license. *Staff recommends non-renewal*." (Emphasis in original.)

¶ 3    On September 18, 2017, the plaintiff sent a facsimile message to defendants that read "*All* my taxes have been paid by *cash*. On 9-18-2017 State Income Taxes + Sales Tax. Copy of pd. receipts enclosed in this fax." (Emphases in original.) The facsimile transmission included copies of two tax receipts issued by the Illinois Department of Revenue.

¶ 4    On September 21, 2017, at its monthly open session meeting, the Board denied the plaintiff's application for renewal of her video gaming license. On September 22, 2017, the Board's administrator sent a letter to the plaintiff, titled "Re: Denial of Renewal of Establishment License." The letter stated that the plaintiff's renewal application was denied on two grounds: lack of a valid liquor license and outstanding tax obligations to the State of Illinois. Regarding the outstanding tax obligations, the letter stated that the plaintiff had "an active tax liability since April 28, 2017," and that an investigation revealed 18 prior instances where she had an outstanding tax obligation to the State of Illinois. The letter informed the plaintiff that she could request a hearing; that her request must be submitted within 10 days of delivery of the letter; and that, if a hearing is granted, it would be *de novo*.

¶ 5    On October 2, 2017, the plaintiff sent a letter to the Board, requesting a hearing on her application for renewal. In that letter, the plaintiff requested reconsideration of the license renewal denial, stating that she discharged her outstanding tax obligation, that she was "not aware" that failure to pay income taxes "affected [her] gaming license," and that she promised that "in the future, filing and paying [her taxes] promptly will be a priority." She concluded her letter by requesting "leniency in the matter."

¶ 6    The minutes of the Board's November 2017 meeting, under the heading "Requests for Hearing," state:

"At the September 2017 meeting, the Board denied the [plaintiff's] license renewal application because it was delinquent in its debts and obligations to the State of Illinois, had a history of *seventeen* active tax liabilities and no valid liquor license. The Request for Hearing complied with the technical requirements of Rule 615 and maintains it satisfied its outstanding tax liability. Currently, the Board's records reflect this location has satisfied its outstanding tax liability and that its liquor license is valid. However, due to its record of incurring eighteen instances of active tax liabilities, Staff recommends denial of the Request for failure to state a *prima facie* case for hearing." (Emphasis in original.)

In her verified complaint seeking administrative review, the plaintiff asserts that: "On November 16, 2017, at the last open session Board meeting (there was no December 2017 Board meeting) the Board issued its Final Decision Denying Hearing." (the Final Decision Denying Hearing or Denial).

¶ 7 On December 1, 2017, the Board's administrator sent a letter to the plaintiff, titled "Denial of Request for Hearing Brenda Doxsie d/b/a Boneyard Bar." The letter states that, at its November 16, 2017, meeting, the Board denied the plaintiff's request for hearing, "finding that it did not establish a *prima facie* case for an administrative hearing." The letter also states that:

"Boneyard Bar was denied renewal of its establishment license because the Board was not provided sufficient facts or evidence in the Request that provided that the outstanding debts and obligations to the State of Illinois had been addressed in full. The denial of your Request for Hearing constitutes a Final Order by the Board."

¶ 8 On January 5, 2018, the plaintiff filed a five-count complaint against the defendants. Count I was an action for administrative review, seeking, *inter alia*, an order reversing and vacating the Board's denial of the plaintiff's video gaming location license renewal application and an order remanding the matter to the Board with instructions to issue the plaintiff's video the requested renewal license. That count also sought an order reversing and vacating the Board's decision denying the plaintiff a hearing on her license renewal application. Counts II, III, and IV sought injunctive relief, *mandamus*, and injunctive relief respectively. Count V sought recovery under section 1983 of Title 42 of the United States Code (42 U.S.C. § 1983 (2018)). The circuit court dismissed counts II, III, and IV, pending determination of count I, and dismissed count V as directed at the Board, but denied the motion to dismiss count V as to the individual defendants.

¶ 9 Following a hearing on count I, the plaintiff's administrative review claim, the circuit court entered an order on August 20, 2019, finding that the plaintiff made a *prima facie* case that she is entitled to an administrative hearing and that she is statutorily entitled to an administrative hearing "pursuant to Section 10-65(d) (5 ILCS 100/10-65(d)) of the Administrative Procedure Act." The order provides that the "Court grants Plaintiff's Count I and remands back to the Illinois Gaming Board to conduct an administrative hearing." The circuit court also continued the matter for status on the plaintiff's section 1983 claim.

¶ 10 The defendants petitioned this court for leave to file an interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(6) (eff. Nov. 1, 2017). We granted the defendant's petition, and this appeal followed.

¶ 11 Initially, we note that the plaintiff has not filed an appellee's brief in this matter. However, the record is short and the claimed error is such that we can easily decide the issues without

the aid of an appellee's brief. Accordingly, we will reach the merits of this appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 12    In an interlocutory appeal brought pursuant to Rule 306(a)(6), we will reverse the order of the circuit court remanding a matter for a hearing before an administrative agency only if the circuit court has abused its discretion. *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 39. A decision is deemed an abuse of discretion only if it is " ' "unreasonable and arbitrary or where no reasonable person would take the view adopted by the circuit court." ' " See *Sentry Insurance v. Continental Casualty Co.*, 2017 IL App (1st) 161785, ¶ 32 (quoting *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 69, quoting *Gulino v. Zurawski*, 2015 IL App (1st) 131587, ¶ 64).

¶ 13    When, as in this case, an appeal is taken from an order of the circuit court entered on administrative review, we review the administrative agency's decision and not the factual determinations of the circuit court. *Doe Three v. Department of Public Health*, 2017 IL App (1st) 162548, ¶ 25. We apply a "clearly erroneous" standard in our review of an administrative agency's decision when the issue presented is a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). The decision of an administrative agency is clearly erroneous only if the reviewing court is left with a " 'definite and firm conviction that a mistake has been committed.' " See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 14    The Video Gaming Act (Gaming Act) (230 ILCS 40/1 *et seq.* (West 2018)) provides that the provisions of the Riverboat Gambling Act (230 ILCS 10/1 *et seq.* (West 2018)) shall apply to the Gaming Act. 230 ILCS 40/80 (West 2018). The Riverboat Gambling Act states that judicial review of final orders shall be conducted in accordance with the Administrative Review Law. 230 ILCS 10/17.1(b) (West 2018). Section 3-110 of the Administrative Review Law provides that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2018).

¶ 15    In Illinois, there is no common law right to engage in gambling. See *Dotty's Cafe v. Illinois Gaming Board*, 2019 IL App (1st) 173207, ¶ 21. In this case, there is no dispute that the renewal license the plaintiff sought was required to allow the use of video gaming terminals as defined in the Gaming Act (230 ILCS 40/1 *et seq.* (West 2018)). Section 45 of the Gaming Act provides, in relevant part, that "[t]he burden is upon each applicant to demonstrate his suitability for licensure." 230 ILCS 40/45(a) (West 2018). Relevant here, the Gaming Act requires each licensed location to have a valid liquor license "in effect at the time of application and at all times thereafter." 230 ILCS 40/55 (West 2018). The rules adopted by the Board also require all licensees to "[k]eep current in all payments and obligations to the State of Illinois and to other licensees with whom video gaming business is conducted." 11 Ill. Adm. Code 1800.210(g) (2020). In this case, the Board denied the plaintiff's license renewal application based on her failure to comply with two requirements: possession of a valid liquor license at the time of application and currency in all payments and obligations to the State of Illinois. The factual findings supporting the Board's September 21, 2017, decision denying the plaintiff's application for renewal of her video gaming license are *prima facie* true and correct. See 735 ILCS 5/3-110 (West 2018). The plaintiff did not dispute that, at the time she filed her video gaming license renewal application, she did not have a valid liquor license or that she was not current in all payments and obligations to the State of Illinois. In her letter to the Board

requesting a hearing, the plaintiff asserted that she paid her sales and income tax liabilities to the State of Illinois in cash on September 18, 2017. She also admitted that she paid her taxes that were due in April, May, and June in the month of July. The plaintiff never claimed to have been current in all payments and obligations to the State of Illinois at the time that she applied for a renewal license. Nor did she assert in her letter requesting a hearing that she had a valid liquor license in effect at the time of the application.

¶ 16    The question of whether the Board erred in its September 21, 2017, decision denying the plaintiff's application for renewal of her video gaming license is a mixed question of law and fact, as it involves the legal effect of a given set of facts. See *City of Belvidere*, 181 Ill. 2d at 205. The Board based its denial of the plaintiff's renewal application on two grounds: the lack of a valid liquor license and outstanding tax obligations to the State of Illinois. Those factual determinations must be taken as *prima facie* true and correct. 735 ILCS 5/3-110 (West 2018). Further, there is no evidence in the record that, at the time that the plaintiff filed her application for renewal of her video gaming license, either finding was inaccurate. We conclude, therefore, that the initial denial of the plaintiff's renewal application was not clearly erroneous.

¶ 17    Section 10-65(d) of the Illinois Administrative Procedure Act provides:

> "Except as provided in subsection (c), no agency shall revoke, suspend, annul, withdraw, amend materially, or refuse to renew any valid license without first giving written notice to the licensee of the facts or conduct upon which the agency will rely to support its proposed action and an opportunity for a hearing in accordance with the provisions of this Act concerning contested cases. At the hearing, the licensee shall have the right to show compliance with all lawful requirements for the retention, continuation, or renewal of the license." 5 ILCS 100/10-65(d) (West 2018).

The Administrative Procedure Act also provides that each agency shall adopt rules of practice for formal hearings. 5 ILCS 100/5-10(a) (West 2018). The rules that the Board adopted relating to hearings are set forth in section 1800.615 of Title 11 of the Illinois Administrative Code (Code). See 11 Ill. Adm. Code 1800.615 (2020). That section of Title 11 of the Code provides that all requests for a hearing must be in writing and include, *inter alia*, "[d]etailed reasons why and the facts upon which the petitioner will rely to show that the petitioner is suitable for licensure, including specific responses to any facts enumerated in the Board's notice of denial." 11 Ill. Adm. Code 1800.615(d)(2) (2020). Section 1800.615 of Title 11 of the Code also provides that: "The Board may deny a request for hearing if the statement of the reasons and facts that it contains does not establish a *prima facie* case or fails to comply with any of the other requirements of this Section." 11 Ill. Adm. Code 1800.615(g) (2020). The defendants argue that neither section 10-65(d) of the Administrative Procedure Act nor section 1800.615 of Title 11 of the Code required the Board to give the plaintiff an in-person hearing on her application for renewal of her video gaming license. We agree.

¶ 18    "When interpreting a statute, the primary objective is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statute itself." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. Here, the language of the Administrative Procedure Act is clear; the plaintiff was entitled only to an "opportunity for a hearing." See 5 ILCS 100/10-65(d) (West 2018). However, in order for that opportunity to progress to an in-person hearing, the plaintiff was required to first demonstrate a *prima facie* case that she was suitable for licensure.

¶ 19    The question of whether the Board erred in its November 16, 2017, order denying the plaintiff's request for a hearing on her renewal application also presents a mixed question of law and fact. There can be no doubt that the plaintiff was given an opportunity for a hearing as evidenced by the letter from the Board's administrator dated September 22, 2017. The Board concluded, however, that, although the plaintiff had resolved her past due tax obligations, the failure to keep her taxes current rendered her unsuitable for license renewal. The plaintiff's request for a hearing did not allege that the defendants' factual findings were erroneous in any way. To the contrary, the plaintiff admitted that she failed to pay her tax obligations promptly and did not mention the liquor license issue. There was no allegation that the Board had misapplied or misinterpreted the statute or regulations related to licensure. Based on those facts, we cannot say that the Board's determination that the plaintiff failed to meet the requirement of establishing a *prima facie* case entitling her to a hearing was clearly erroneous.

¶ 20    Having concluded that neither the Board's September 21, 2017, decision denying the plaintiff's application for renewal of her video gaming license nor its November 16, 2017, order denying the plaintiff's request for a hearing is clearly erroneous, we find that the circuit court's order remanding this matter to the Board to conduct an administrative hearing on the plaintiff's renewal application was an abuse of discretion. Accordingly, we reverse the circuit court's order of August 20, 2019, and remand this matter for further proceedings not inconsistent with this opinion.

¶ 21    Reversed and remanded.